TEXARKANA & FORT SMITH RAILWAY COMPANY V. JANE FRUGIA ET AL.

Decided April 25, 1906.

**1.—Peremptory Instruction.**

An issue of negligence should never be withdrawn from the jury, except when there is no material conflict in the evidence and when different inferences can not be drawn from it.

**2.—Intoxication—Negligence.**

The question as to the effect of intoxicating liquors upon a man is ordinarily one of fact for the jury, and not for the courts. Ordinarily intoxication is simply evidence for the jury to consider in connection with all the attendant facts and circumstances in determining whether an act done by the party under such influence was negligence.

**3.—"Look and Listen"—Presumption—Evidence.**

It is not negligence *per se* for one to fail to look and listen before going on a railroad track. In the absence of any direct evidence upon the question, a jury would have the right to presume as a matter of fact that he did look and listen.

**4.—Railroad Track—Use by Public.**

If a portion of the roadbed of a railway has been commonly and habitually used for a long time by the public as a footpath, with the knowledge and acquiescence or by the permission of the company, it is considered as having licensed the public to use such portion of its roadbed for that purpose. So with regard to a crossing over its track.

**5.—Violation of City Ordinances—Negligence.**

The violation of city ordinances regulating the speed of locomotives within its corporate limits, and forbidding the running of locomotives at night without a headlight is negligence, and renders the guilty party liable for an injury proximately caused by such negligence.

**6.—Habitual Use of Track—Duty to Look Out.**

At such places as the public are accustomed to use a railroad track it is the duty of the railroad employes to keep a lookout.

**7.—Precise Locality of Accident—Pleading.**

The substance of the issue in this case being whether deceased was negligently killed within the limits of the city of Beaumont at a point on its road commonly used by the public with the knowledge and acquiescence of the railroad company, the court properly refused to confine the jury to any particular locality, the substance of an issue is all that need be proven.

**8.—Charge May Assume a Fact as Proved Where not Controverted.**

Where facts are uncontroverted they should not be submitted to the finding of the jury but should be assumed by the charge as established. A violation of the city ordinances by defendant having been proved, it was only necessary for plaintiff to prove that such negligence was the proximate cause of his injury, unmixed with contributory negligence on his own part.

**9.—Measure of Damages—Loss of Society and Grief not Included.**

Charge considered, and held not obnoxious to the objection that it permitted the jury to allow damages for loss of the society of the deceased nor for grief plaintiffs may have suffered. I. & G. N. Ry. Co. v. McVey, 87 S. W. Rep., 328, distinguished.

**10.—Ordinances of City—Evidence.**

Where the charter of a city provided "that the ordinances, resolutions and by-laws of the city council may be proved *prima facie* by a book of printed

ordinances of the city appearing to be printed by the authority of the city," a printed book of ordinances purporting on its title page to have been printed by authority of the city council of such city was properly admitted in evidence.

**11.—City Limits—Testimony—Hearsay.**

The testimony of a witness as to what a deceased officer of the city told him as to the locality of the city limits is hearsay and properly excluded.

**12.—Same.**

Testimony that the city did not exercise jurisdiction over a certain piece of property is not evidence that such property is not within the city limits.

**13.—Attacking Veracity—Harmless Error.**

When it does not appear what the testimony of the witness was, nor that it was material to appellant it can not be determined whether or not it was harmful error for the court to admit testimony attacking the reputation of such witness for truth and veracity.

Appeal from the District Court of Jefferson County. Tried below before Hon. L. B. Hightower, Jr.

*Greers, Nall & Neblett,* for appellant.—The court committed material and reversible error in failing to peremptorily instruct the jury to find for appellant railway company, because the evidence shows that the deceased was on the road without right and his position was not discovered in time to avoid injuring him, and that if appellant failed to ring its bell, burn its headlight on its engine and run its train not exceeding six miles an hour, such failure was not a violation of the duty due to the deceased and could not give appellees any cause of action. Texas & Pac. Ry. Co. v. Shoemaker, 84 S. W. Rep., 1049; St. Louis S. W. Ry. Co. v. Shiflet, 83 S. W. Rep., 677; Missouri Pac. Ry. v. Porter, 73 Texas, 304; Cardwell v. Gulf, B. & G. N. Ry., 13 Texas Ct. Rep., 458; Texas & Pac. Ry. v. Breadow, 90 Texas, 27; Texas & Pac. Ry. v. Staggs, 90 Texas, 460; Ft. Worth & D. C. Ry. v. Shetter, 94 Texas, 197; Missouri, K. & T. Ry. v. Haltom, 95 Texas, 113; Gulf, C. & S. F. Ry. v. Townsend, 82 S. W. Rep., 804; Kuehn v. Missouri, K. & T. Ry. Co., 32 S. W. Rep., 88; Texas C. Ry. v. Harbison, 12 Texas Ct. Rep., 382; St. Louis S. W. Ry. Co. v. Highnote, 12 Texas Ct. Rep., 843; Smith v. Fordyce, 18 S. W. Rep., 663; Missouri Pac. Ry. Co. v. Brown, 18 S. W. Rep., 670.

There being no evidence that the deceased Frugia was killed where the railroad of defendant intersects and crosses Fifth Street, the court committed reversible error in sending such issue to the jury. International & G. N. Ry. Co. v. Hill, 13 Texas Ct. Rep., 372; Cage v. Tucker, 5 Texas Ct. Rep., 535; Texas & Pac. Ry. Co. v. Wisenor, 66 Texas, 674; Houston & T. C. Ry. Co. v. Gilmore, 62 Texas, 391; St. Louis S. W. Ry. Co. v. Shiflet, 94 Texas, 141; Atchison, T. & S. F. Ry. Co. v. Click, 23 S. W. Rep., 833; Houston & T. C. Ry. Co. v. Tierney, 72 Texas, 312; Willis v. Whitsitt, 67 Texas, 676; Texas & P. Ry. Co. v. Hightower, 33 S. W. Rep., 541.

The verdict of the jury being contrary to the charge of the court and to the allegations of the plaintiff's petition as to the point where the deceased was killed and there being no allegation to support the verdict,

the court erred in not granting appellant's motion for new trial. Middlebrook v. Zapp, 73 Texas, 31; Texas & P. Ry. Co. v. Hightower, 33 S. W. Rep., 541; Moore v. Kennedy, 81 Texas, 147; Riverside Lumber Co. v. Lee, 7 Texas Civ. App., 525; Brinkley v. Harkins, 48 Texas, 226.

The charge of the court complained of is error for which the judgment should be reversed, because it does not exclude from the jury the idea that they could allow as pecuniary loss damages for loss of the society of the deceased, nor damages for grief plaintiffs may have suffered from the death of the deceased, and the jury is not by the charge restrained from allowing damages for such loss. International & G. N. Ry. Co. v. McVey, 12 Texas Ct. Rep., 993; Galveston, H. & S. A. Ry. Co. v. Worthy, 87 Texas, 459; Merchants' & Planters' Oil Co. v. Burns, 96 Texas, 573; Texas & Pac. Ry. Co. v. Lester, 75 Texas, 61; Galveston, H. & S. A. R. R. Co. v. Hughes, 22 Texas Civ. App., 134; International L. & P. Co. v. Maxwell, 65 S. W. Rep., 79; San Antonio Traction Co. v. White, 94 Texas, 468.

The court committed material and reversible error in admitting in evidence and permitting to be read what purports to be articles 379, 380 and 563 of the ordinances of Beaumont, because there is no proof of the execution, passage or publication of the ordinance under the authority of the city council of the city of Beaumont. International & G. N. Ry. Co. v. Hall, 9 Texas Ct. Rep., 917; City of Austin v. Walton, 68 Texas, 509; Brush Elec. Light and Power Co. v. LeFevre, 93 Texas, 607.

It being shown that W. A. Ives, who was former mayor and alderman of the city of Beaumont, who was secretary, and in whose custody the records of the city were, was dead, his statement made to the witness Potter as to the location of the southern boundary line of the city of Beaumont and that such line was at a point which would place the deceased entirely outside of the city at the time of his killing was admissible, and the court erred in excluding such statement. Tucker v. Smith, 68 Texas, 478; Russell v. Hunnicutt, 70 Texas, 660; Stroud v. Springfield, 28 Texas, 669; Welder v. Carroll, 29 Texas, 334; Cox v. State, 41 Texas, 5; Rosenburg v. Hayes, 85 Texas, 380.

The true location of the south line of the city of Beaumont being in doubt and uncertainty, and the north line of the gas plant being some five or six hundred feet north of the point where the deceased was killed, it was competent to show that the city was not exercising jurisdiction over the gas plant as a circumstance to show that the true south boundary line of the city was north of the point where the deceased was killed and the point of killing outside of the city. Gulf, C. & S. F. Ry. Co. v. Moody, 30 S. W. Rep., 574; Cook v. Carroll Land Co., 6 Texas Civ. App., 328; Weir v. Van Bibber, 34 Texas, 229.

*Smith, Crawford & Sonfield,* for appellees.—Deceased's intoxication is only a circumstance allowed to go to the jury, in order that it might be considered by them in determining whether or not he acted as an ordinarily prudent person would have acted under the same or similar circumstances. It is not enough that the injured person be intoxicated; but the jury must believe that that intoxication was in some way responsible for the injury—and this must be decided by the jury. Houston

& T. C. Ry. v. Reason, 61 Texas, 618; Missouri Pac. Ry. v. Martin, 2 Texas App. Civ. Cases, 572; Missouri Pac. Ry. v. Burnett, 3 Texas App. Civ. Cases, 288.

That appellant was guilty of negligence, as a matter of law: Frugia v. Texarkana & Ft. Smith Ry., 11 Texas Ct. Rep., 120 (this case on former appeal); Gulf, C. & S. F. Ry. v. Pendery, 36 S. W. Rep., 793; Gulf, C. & S. F. Ry. v. Matthews, 66 S. W. Rep., 591; Gulf, C. & S. F. Ry. v. Calvert, 32 S. W. Rep., 246.

That the deceased was rightfully upon the track: Frugia v. Railway, 11 Texas Ct. Rep., 120; Gulf, C. & S. F. Ry. v. Matthews, 13 Texas Ct. Rep., 244 (decided June, 1905, by Supreme Court); Washington v. Missouri, K. & T. Ry. Co. (supra), 90 Texas, 314; St. Louis & T. Ry. v. Crosnoe, 72 Texas, 79; Gulf, C. & S. F. Ry. Co. v. Matthews, 66 S. W. Rep., 591; Missouri, K. & T. Ry. v. Bellew, 54 S. W. Rep., 1079; Galveston, H. & S. A. Ry. v. Lewis, 25 S. W. Rep., 293; Gulf, C. & S. F. Ry. v. West, 36 S. W. Rep., 102; Texas & Pac. Ry. v. Barrett, 57 S. W. Rep., 602; Adams v. Southern Ry. Co., 84 Fed. Rep., 599; See note on "Implied License to Go Upon Railway Track," 13 Law Rep. Ann., 634.

In Gulf, C. & S. F. Ry. v. Matthews, 13 Texas Ct. Rep., 244, decided in June, 1905, after citing and reaffirming Washington v. Missouri, K. & T. Ry. Co., (supra).

That the deceased was not guilty of contributory negligence, as a matter of law: Gulf, C. & S. F. Ry. Co. v. Wagley, 40 S. W. Rep., 538; Galveston, H. & S. A. Ry. Co. v. Tirres, 8 Texas Ct. Rep., 529; Gulf, C. & S. F. Ry. Co. v. Creeland, 26 S. W. Rep., 153; International & G. N. Ry. Co. v. Eason, 35 S. W. Rep., 209; Gulf, C. & S. F. Ry. Co. v. Gascamp, 69 Texas, 547; Texas & Pac. Ry. Co. v. Wright, 62 Texas, 518; Texas & Pac. Ry. Co. v. Hill, 71 Texas, 451; Kansas & G. S. L. Ry. Co. v. Dorough, 72 Texas, 111; Dillingham v. Parker, 80 Texas, 573; Gulf, C. & S. F. Ry. Co. v. Pendry, 87 Texas, 553; Garteiser v. Galveston, H. & S. A. Ry. Co., 21 S. W. Rep., 632; San Antonio & A. P. Ry. Co. v. Long, 23 S. W. Rep., 499; Galveston, H. & S. A. Ry. Co. v. Briggs, 23 S. W. Rep., 503; Gulf, C. & S. F. Ry. Co. v. Dowman, 28 S. W. Rep., 923; Houston & T. C. Ry. Co. v. Gaither, 35 S. W. Rep., 179.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by Jane Frugia for herself, as surviving wife, and for four minor children of Zeb Frugia, deceased, to recover damages alleged to have been sustained by them by reason of his death, which was alleged to have been caused by the negligence of the defendant in running a train through the city of Beaumont at a greater speed than six miles per hour and without ringing the engine bell, contrary to the ordinances of said city, which, by reason of such negligence, ran over and killed him while crossing its railway track. It was also alleged, as grounds of negligence, that defendant's servants operating said train through said city at night failed to have a headlight on its engine, and negligently failed to keep a lookout for persons on the track where deceased was killed, it being at a point commonly used by the public, with the knowledge and acquiescence of the company, in crossing its road.

The defendant answered by general and special exceptions, a general denial, contributory negligence, and that deceased was a trespasser upon its road and was not discovered in time to avoid injuring him.

The case was tried before a jury and the trial resulted in a judgment in favor of the plaintiffs for $5,000, which was apportioned among them as follows: To Mrs. Jane Frugia, $1,000; to Richard Frugia, $800; Thomas Frugia, $800; Day Frugia, $1,000, and to Clara Frugia, $1,400.

*Conclusions of Fact.*—The evidence in the record shows without dispute the following facts: (1) That on the night of the 18th of May, 1902, Zeb Frugia, in the corporate limits of the city of Beaumont, Texas, while riding horseback towards his home, rode on appellant's railroad track, at a place generally used by the public with the knowledge and acquiescence of appellant, and he and his horse were struck, run over and killed by one of appellant's engines drawing one of its trains. (2) That an ordinance of said city makes it unlawful for an engineer or other persons in charge of a locomotive or train to run the same within its corporate limits at a greater rate of speed than six miles an hour, and provides that any person violating the ordinance shall, upon conviction be fined not less than five nor more than one hundred dollars. Another ordinance of the city provides that any person who causes, permits or suffers any locomotive engine to run within the limits of the city at a greater rate of speed than six miles an hour, or who causes, permits or suffers any locomotive, engine to run or move in the night time without having a headlight, or who shall cause, permit or suffer a locomotive engine or train to run at any time without causing the proper signals to be given, shall be fined not less than one nor more than one hundred dollars. (3) That Jane Furgia is the widow, and the other appellees the minor children of the deceased.

The evidence is reasonably sufficient to show the following additional facts: (1) That appellant's servants operating the engine negligently failed to keep a lookout for persons along the railroad track where the deceased was struck by its locomotive; (2) that it negligently permitted the engine which struck deceased to be run within the corporate limits of the city of Beaumont at a greater rate of speed than six miles an hour, and without a headlight; (3) that the concurrence of all or some of these acts of negligence was the proximate cause of Zeb Frugia's death; (4) that deceased was not a trespasser on appellant's track and was not guilty of negligence proximately contributing to his injury; and (5) that by reason of appellant's negligently causing the death of deceased, appellees, his surviving wife and children, sustained damages in the amount assessed by the jury.

*Conclusions of Law.*—1. The first assignment of error is directed against the action of the court in refusing to peremptorily instruct the jury at appellant's request to return a verdict for the defendant. Upon a prior trial such a peremptory instruction was given, and, on appeal, the judgment rendered upon a verdict returned in obedience to it was reversed and the cause remanded, for the purpose of having the jury try the issues made by the pleadings and evidence. See 82 S. W. Rep., 814; 11 Texas Ct. Rep., 120. An issue of negligence should never be

withdrawn from the jury, except where there is no material conflict in the evidence and where different inferences can not be drawn from it. (Bonn v. Galveston, H. & S. A. Ry., 82 S. W. Rep., 808, and authorities cited.) But wherever there is, from the evidence, room for reasonable differences of opinion, the judgment of the jury must be taken. (Drake v. San Antonio & A. P. Ry., 89 S. W. Rep., 407.)

The first proposition under this assignment is "that the evidence shows that deceased was guilty of negligence which proximately caused his death, in that, while intoxicated and under the influence of liquor, to such an extent as to render him incapable of exercising ordinary care for his protection, when his eyes were sore, the night dark and the wind blowing high, rendering it difficult to see or hear an approaching train, he rode a slow, clumsy and unwieldy horse immediately in front of a passing train not at a public crossing, and remained there until he was killed." If the evidence showed indisputably the facts grouped in this assignment, then it might be held that deceased was guilty of negligence as a matter of law. But they do not so appear. There was no evidence tending to show that deceased "rode a slow, clumsy and unwieldy horse," or that his "eyes were sore," or that he "remained in front of a passing train; that is, if the word "remained" is given its ordinary and generally accepted meaning. While the place where he rode upon the track was not a "public crossing" in its technical sense, it was a part of the track along which members of the public, with appellant's knowledge and implied consent, generally passed and crossed. There was evidence strongly tending to show that deceased was under the influence of intoxicating liquors to such an extent as to enable a witness to pronounce him "considerably organized." But it does not conclusively appear that he was so affected by liquor as would necessarily deprive him of the use of his faculties and senses and render his act in endeavoring to cross the track when and where he did, negligence *per se*. In other words, the evidence is not such as would require the question, by reason of his being under the influence of intoxicants, of his contributory negligence to be withdrawn from the jury, and a peremptory instruction of a verdict for the defendant.

Men have been getting drunk ever since Noah celebrated the subsidence of the flood. The ancient Germans, from whom the Anglo Saxon race sprung, used to propose their laws in their Legislature while drunk and consider their passage while sober. And it is suspected by some that their decendants propose laws in Legislatures of the present day while in the same condition, though their enactment may not be considered while sober, as by their ancestors. Intoxication affects different men in different ways. In some it quickens the intellectual faculties and sharpens the physical senses; and in some the first are for a time destroyed and the latter blunted—it largely depends upon the kind of man and liquor. The question as to the effect of intoxicating liquors upon a man is ordinarily one of fact for the jury and not for the courts. It can be said, however, that drunkenness never places one beyond the protection of the law, nor gives another the right to injure or kill him. Intoxication may be evidence of negligence of an act done by one while under its influence, and, in some cases, may be conclusive as to some acts alleged as negligence, but ordinarily it is simply evidence for the

jury to consider, in connection with all the facts and attendant circumstances, in determining whether an act done by the party while under such influence was negligence.

So the question really to be determined under this assignment is, can it be said as a matter. of law that any man intoxicated to the degree deceased was, who, in a city whose ordinances prohibit an engine being run within its corporate limits at a greater rate of speed than six miles an hour, and at night without a headlight, when the wind is high, in endeavoring to cross a railroad track at a place where numbers of the public habitually cross with the knowledge and consent of the railway company, rides his horse upon the track and is struck and killed by the engine which is running at a speed of from fifteen to thirty miles an hour, is guilty of such contributory negligence as precludes his wife and children from maintaining an action against the company for negligently causing his death? If the man were sober, an affirmative answer could not be given this question; for it would certainly then be held in this State that the question is one of fact and not a matter of law. If he were sober, even if it were shown that he failed to look and listen before endeavoring to ride across, the defendant would be met with the proposition that it is not negligence *per. se* for one to fail to look and listen before going on a railroad track. If it should be urged that a jury would have, in all probability, found it was negligence for him to fail to look and listen, it might be said in reply, in view of the testimony, that there is no evidence that he did not look and listen, for had he looked and listened he may not, on account of the engine being without a headlight, have seen the train, and, on account of the high wind and the train's running down grade with the steam off and without ringing the bell, not have heard it. Or he may have seen and heard it, and yet, relying upon it observing the ordinance, have known he would have ample time to ride across before a train running at a speed not exceeding six miles an hour could reach the point where he intended to cross. A jury, in the absence of any direct evidence upon the question, would have the right to presume as a matter of fact that he did look and listen; for so strong is this presumption of fact, that in jurisdictions where courts are not inhibited from charging upon the weight of the evidence in cases like this, the court may instruct the jury "that in the absence of evidence to the contrary it should be presumed that the deceased stopped, looked and listened." (Texas & P. Ry. v. Gentry, 163 U. S., 366, 41 Law Ed., 186-192.) In the case of Baltimore & P. Ry. v. Landrigan, 191 U. S., 462, 48 Law Ed., 262, 24 S. W. Rep., 137, the court said: "The presumption is founded on the law of nature. We know of no more universal instinct than that of self-preservation—none that so insistently urges to care against injury. It has its motives to exercise in the fear of pain, maiming and death."

If the question under consideration would be one of fact if a sober man had been killed under the same circumstances, why should it not be in the case at bar? It can not be said that deceased was in such a condition that he could not and did not exercise his faculties and senses and instincts of self preservation before endeavoring to cross the track. See Gulf, C. & S. F. Ry. Co. v. Melville, 87 S. W. Rep., 865, and authorities cited.

Other propositions under the assignment are that the court erred in not giving the special charge instructing a verdict for the defendant, because the evidence shows that deceased was a trespasser upon the defendant's road, and defendant owed him no duty; that if defendant did fail to ring its bell, burn its headlight on its engine, and to run its train not exceeding six miles an hour, such failure was not a violation of any duty it owed deceased.

In Gulf, C. & S. F. Ry. Co. v. Matthews, 88 S. W. Rep., 192, 13 Texas Ct. Rep., 244, it is said by the Supreme Court in an opinion by Justice Brown, "It is well settled by the decisions of this court and by the decisions of courts of other States that if a portion of the roadbed of a railway has been commonly and habitually used for a long time by the public as a footpath, with the knowledge and acquiescence or by the permission of the company, it is considered as having licensed the public to use such portion of its roadbed for that purpose." It is then held that a person run over and killed by a train when using such portion of the defendant's roadbed was not a trespasser. The same principle obtains where there has been such long and continuous use of a portion of the roadbed of a railway company by the public as a crossing. From this it follows that deceased was not a trespasser.

The ordinance of the city prohibiting engines from being run within its corporate limits at a greater rate of speed than six miles an hour, and at night without a headlight were ordained for the protection of life and limb of all persons lawfully crossing the tracks of railroads within the limits of the city, whether at public crossings or at portions of the roads where the public habitually crossed with the knowledge and acquiescence of the company. (Houston, E. & W. T. Ry. v. Powell, 41 S. W. Rep., 695; Galveston, H. & H. Ry. v. Levy, 79 S. W. Rep., 879; Gulf, C. & S. F. Ry. v. Melville, 87 S. W. Rep., 865.) These ordinances were passed in the exercise of a police power vested in the city for the protection of the lives and property of persons within its limits, and a breach of the requirement of either is negligence, and renders the party liable for an injury proximately caused by such negligence. (Gulf, C. & S. F. Ry. v. Pendry, 36 S. W. Rep., 793; Missouri, K. & T. Ry. v. Matherly, 81 S. W. Rep., 589; Galveston, H. & S. A. Ry. v. Vollrath, 89 S. W. Rep., 283.) Besides, it is well settled that the servants of a railroad company operating its engines are bound to keep a lookout for persons using its track at a place where they are accustomed to use it. (St. Louis S. W. Ry. Co. v. Shiflet, 83 S. W. Rep., 677; Hutchens v. St. Louis S. W. Ry. Co., 29 S. W. Rep., 24; Missouri, K. & T. Ry. v. Matherly, 81 S. W. Rep., 589.

We conclude that the court did not err in refusing to peremptorily instruct a verdict for the defendant.

2. One has only to read plaintiff's petition in order that it may be demonstrated that the second, third and fourth assignments of error, which, in various forms, contend that plaintiffs' petition alleges that Frugia was killed at a point where Fifth Street intersects defendant's road, and, as the undisputed evidence shows that he was not killed there, but at a different point, the court should not have so charged the jury as to have allowed them to find a verdict for plaintiffs upon evidence which did not sustain but was contrary to such allegation in their peti-

tion, are not well taken. For the petition contains no such specific allegation and can not be construed to contain such an averment. Besides, the substance of an issue is all the law requires to be proven. The substance of the issue in this case is whether deceased was killed within the limits of the city of Beaumont, at a point on its road commonly used by members of the public with its knowledge and acquiescence, by being negligently run over by appellant's engine. El Paso Elect. Ry. v. Harry, 83 S. W. Rep., 737.

3. By the fifth assignment of error it is contended that the court erred in paragraph 6a of its charge to the jury, in that it submitted as an issue whether the place where deceased was killed was habitually used by the public as a place of crossing on horse-back and in vehicles with the knowledge and consent of the defendant, when there was no evidence in the record to raise such question. We deed it unnecessary to recite the evidence; for it is sufficient to say that from reading it we conclude that it established the affirmative of such issue, and so recorded it in our conclusions of fact.

4. The seventh paragraph of the court's charge is as follows: "You are instructed, that under the law, if the said accident occurred within the city limits of the city of Beaumont as alleged by plaintiff, and defendant's train within said city limits at said time was being run at a greater rate of speed than six miles per hour, and if said train was being run without a headlight on the engine, or without its bell being rung, and either of or all of said acts or omissions, if any, was or were the direct and proximate cause of the death of the said deceased, then in that event the defendant was guilty of negligence.

"But in this connection you are instructed that although you may believe from the evidence that the defendant was guilty of negligence for the reason that said train at the time was running in excess of six miles per hour within the city limits of the city of Beaumont, if you find that it was so running within said city limts; or that defendant was guilty of negligence because the bell on said engine was not being rung at said time, or that defendant was guilty of negligence in that there was no headlight on the engine at said time and place, if there was not, still you are instructed that the plaintiff would not be entitled to recover unless such negligence was the direct and proximate cause of the death of deceased, without contributory negligence on his part, or if you find that deceased was a trespasser upon the defendant's track at said time and place, then plaintiff can not recover however negligent defendant or its employes were at the time." This is complained of as being upon the weight of evidence. The uncontroverted evidence shows valid ordinances of the city of Beaumont prohibiting engines and trains being run within the city limits at a greater rate of speed than six miles an hour, or a train being run within the city limits at night without a headlight on its engine. It also is indisputably shown that the accident occurred at night. It is well settled that where facts are uncontroverted they should not be submitted to the finding of the jury, but should be assumed by the charge as established. The violation of the statute or ordinance regulating the speed of trains, or requiring signals or warnings of approach to be given is negligence as a matter of law, and, when proven by one who bases his cause of action for an injury in consequence of

such violation, it is then only necessary for him to prove that such negligence was the proximate cause of his injury to entitle him to recover, provided it is not shown that he was guilty of contributory negligence. (San Antonio & A. P. Ry. Co. v. Bowles, 88 Texas, 635; Texas & P. Ry. v. Brown, 33 S. W. Rep., 148; Gulf, C. & S. F. Ry. Co. v. Calvert, 32 S. W. Rep., 248; Missouri, K. & T. Ry. v. Matherly, 81 S. W. Rep., 589; Shearman & Redf., Neg., sec. 13.) The charge leaves it to the jury to determine whether the ordinances or any of them were violated: and if it should be found that they were, then declares the legal effect of such violation, and requires the jury then to find whether such violation was the proximate cause of Frugia's death, and, if it were, whether contributed to by deceased. The assignment is overruled.

4.   The ninth paragraph of the charge, which is complained of in the seventh assignment of error, is an application of the principles of law enunciated in the sixth to the case, and is not obnoxious to the objections urged.

5.   The eighth assignment of error complains of the tenth paragraph of the charge, which declares the measure of damages, as follows:   "If in the event you find for plaintiff under the instructions herein given you, you will assess the damages for such a sum of money as if paid now would fairly compensate the plaintiff and said minor children for the pecuniary loss, if any, sustained by reason of the death of the said Zeb Frugia," then follows a form of the verdict.

It is urged against this part of the charge that "it does not exclude from the jury the idea that they could allow as pecuniary loss damages for loss of the *society of the deceased,* nor damages for *grief* plaintiffs may have suffered from the death of deceased, and the jury is not by the charge restrained from allowing damages for such loss."   The charge is not subject to the objection; for it logically excludes everything except compensation for pecuniary loss, and can by no principle of construction be held to include loss of society of the deceased or grief plaintiffs may have suffered from his death.   What is not comprehended, expressly or implied, in a proposition is logically excluded.   The error in the McVey case was that, after the charge had stated correctly the measure of damages, it expressly excluded an improper element of damages without expressly excluding other elements of the same character.   And it was thought that, inasmuch as some improper elements were expressly excluded, it might be taken to include other elements of the same nature.

6.   The assignments of error from the ninth to the fourteenth, inclusive, which complain of the court's charge have been considered, and we have reached the conclusion that none of them is well taken.   We deem it unnecessary to discuss them, for the principles of law enunciated by the charge are too well established to require discussion or citation of authorities.   That such principles are applicable to the case is apparent to any one familiar with the law and acquainted with the facts in the record.

7.   The substance of such special charges as were requested by appellant and refused by the court as is the law and applicable to the case is contained in the court's general charge.   Therefore, we overrule the

fifteenth, sixteenth, seventeenth, eighteenth and twenty-first assignments of error.

8. The nineteenth assignment of error complains of the court's permitting the plaintiffs to read in evidence the ordinances of the city of Beaumont regulating the speed of engines and trains, ringing bells and maintaining headlights at night on engines while being operated within the city limits, the objection being that there was no proof of the execution, passage or publication of such ordinances by and under the authority of the city council.

The ordinances were read in evidence from a book in which they were printed, upon which book is endorsed, "Charter and Ordinances of the City of Beaumont, Texas." On the title page of the book is printed, "The Charter and Ordinances of the City of Beaumont, comprising all of the civil and criminal ordinances in force and effect for the city of Beaumont, May, 1899, revised and compiled by William L. Thompson and D. P. Wheat, Beaumont, Texas; published December, 1899, by the authority of the council of the city of Beaumont."

Section 34 of the charter of the city of Beaumont, enacted by the Twenty-sixth Legislature on the 13th of May, 1899, provides that "in all judicial proceedings it shall be sufficient to plead an ordinance of the city by caption without embodying the entire ordinance in the pleading, and all printed ordinances or codes of ordinances shall be admitted in evidence in any suit, and shall have the same force and effect as the original ordinances."

Section 82 of the charter is: "That the ordinances, resolutions and by-laws of the city council may be proved *prima facie* by a book of printed ordinances of the city, appearing to be printed by the authority of the City or by copies of ordinances certified by the city secretary to be true copies of such ordinances or by the recorder thereof."

Other provisions of the charter empower the city council to enact ordinances "to regulate the speed of engines and locomotives within the city to prohibit and regulate the ringing of bells and blowing of whistles of railroad engines and locomotives within the city limits; to establish . . . by-laws and ordinances . . . for the maintenance of the peace and tranquility of said city, as well as for the protection of the persons and property of its inhabitants, and to enact and ordain any and all ordinances, not repugnant' to the Constitution and laws of the State."

From this it appears that the ordinances in question were introduced in evidence under the express provisions of the city charter by which the Legislature delegated to the council the power and authority to enact them. More need not be said in disposing of this assignment. This also disposes of the twentieth assignment of error.

9. The testimony of the witness Potter, which appellant claims in the twenty-second assignment the court erred in not allowing introduced in evidence, was hearsay pure and simple and inadmissible for that reason.

10. Testimony that the city of Beaumont did not exercise jurisdiction over a gas plant was not evidence tending to show that the place where deceased was killed, though the plant was six hundred feet north of there, was not within the limits of the city. It might as well be contended that because the State of Texas has never exercised juris-

diction over a part of her territory that such territory is not within the boundaries of the State, as to contend that because a city does not exercise jurisdiction over a piece of property that such property is not within the city limits. Therefore, we overrule the twenty-third assignment of error.

11. It does not appear from the statements subjoined to the propositions under the twenty-fourth assignment of error that the testimony of the witness Harry Adams (his testimony not being shown) was material to any issue in the case or would have been of any advantage to defendant had such witness's reputation for truth and veracity remained unchallenged. Therefore, it can not be said that the appellant was prejudiced by the testimony of Clarence Leonard, complained of in the twenty-fourth assignment of error, by which it was sought to impeach the reputation of Adams, even though it should appear that the court erred in admitting Leonard's testimony. A court will not reverse a judgment for reason of a harmless error. This disposes of the twenty-fifth assignment of error as well.

12. The assignments of error from the twenty-sixth to the forty-fifth inclusive, which complain, upon various grounds, of the court's overruling defendant's motion for a new trial are all overruled, because all questions presented by them have been considered and disposed of in passing upon the preceding assignments. The judgment of the District Court is affirmed.

*Affirmed.*

Writ of error refused.