GILLETTE MOTOR TRANSPORT, Inc., et al. v. BLAIR et al.

No. 3579.

Court of Civil Appeals of Texas. Beaumont.

Jan. 28, 1940.

Rehearing Denied Feb. 7, 1940.

Vinson, Elkins, Weems & Francis, of Houston, and Pitts & Liles, of Conroe, for appellants.

W. E. Bell, of Houston, and A. A. Turner, of Conroe, for appellees.

WALKER, Chief Justice.

On the 21st day of November, 1938, R. D. Blair was killed in Montgomery county in a collision between an automobile which he was driving and a truck owned and operated at the time of the collision by appellant, Gillette Motor Transport, Inc. On the findings of the jury, on motion of appellees judgment was rendered on the 4th day of April, 1939, in favor of appellees, the surviving mother, wife and minor children of the deceased, against appellant for the sum of $11,000, and in favor of the surviving wife for· the sum of $1,750 for personal injuries suffered. by her in the collision. After the entry of the judgment all the appellees filed a tender of remittitur of $128 against the verdict of $11,000 damages found by the jury, and the surviving wife made a tender of remittitur of the full amount of damages awarded her. On the day their tenders of remittitur were filed, the court made thereon the following order: "That said offer of remitter be filed among the papers of this cause and entered upon the minutes of the court with respect to this proceeding to await the action of the Court of Civil Appeals for the Ninth Supreme Judicial District at Beaumont in this cause."

The measure of damages in favor of appellees as a group was submitted to the jury by the following special issue and charge:

"Special Issue No. 17

"What amount of money,. if any, if paid now in cash, do you find from a preponderance of the. evidence will fairly and reasonably compensate the plaintiffs, Hulde E. Blair, widow, and Betty Jane Blair, Joyce LaVerne Blair, Beatrice Blair and John Morris Blair and Joe Dorris Blair, the five children, and Mrs. Lou Blair, mother, for the death of R. D. Blair, who was husband and father and son to plaintiffs as respectively designated above, for the pecuniary loss, if any, which they have sustained respectively as aforesaid?

"Answer in Dollars and Cents

"Answer ———

(a) "In arriving at the damages, if any, for Mrs. Hulde E. Blair, for the loss of her husband, R. D. Blair, you may consider such sum of money, if any, as being paid now will reasonably compensate her for the pecuniary loss she has sustained and in determining that you may take into consideration the probable value of the contributions and maintenance and support of R. D. Blair, deceased, would have made to his wife, Hulde E. Blair, had he not died, and the value of the personal services R. D. Blair, deceased, would have ˙rendered to Hulde E. Blair had he lived.

(b) "In arriving at the damages, if any for the children of R. D. Blair; that is, for Betty Jane Blair, Joyce LaVerne Blair, Beatrice Blair, John Morris and Joe Dorris Blair, you may consider from the evidence

what would be the probable amount and value of the pecuniary aid, if any, which the said R. D. Blair would probably have contributed after the date of his death, if he had not died, to the plaintiffs during their minority, or to either of them, and the pecuniary value, if any, of the counsel and advise which the said Betty Jane Blair, Joyce LaVerne Blair, Beatrice Blair, and John Morris and Joe Dorris Blair would probably have received during their minority from the said R. D. Blair if· he had not died; and you will apportion the damages, if any, so found, between said children in such shares as to you may seem just, stating in your answer to this question the amount, if any, you find for each of the children and so write in the blanks for that purpose on this page.

(c) "By the term 'pecuniary benefits' or 'pecuniary aid' as used in this charge is meant not only money but everything that can be valued in money, including as to said minor children, the reasonable money value of the care, education and mental and moral training that they might have expected to receive until they reached the age of 21 years from their father, R. D. Blair, had he lived.

(d) "In arriving at the damages, if any, to Mrs. Hulde E. Blair for the death of her husband, R. D. Blair, you will consider the expense of his funeral and burial, if paid by Mrs. Hulde E. Blair, in addition to her reasonable expectation of support and maintenance and contribution from him had he lived as before mentioned.

(e) "In arriving at the damages, if any, for Mrs. Lou Blair, mother of R. D. Blair, deceased, you will consider the pecuniary benefit in the way of contribution to her by him which she had the reasonable expectation of receiving had he lived.

(f) "You will not consider grief or distress of mind due to the death of R. D. Blair as an element of damage.

(g) "The damages, if any, which you have answered above in total sum, you will now apportion among the plaintiffs, as follows:

"To Mrs. Hulde E. Blair for loss of husband $————

"To Betty Jane Blair, daughter of R. D. Blair $————

"To Joyce LaVerne Blair, daughter of R. D. Blair $————

"To Beatrice Blair, daughter of R. D. Blair $————

"To John Morris Blair, son of R. D. Blair $————

"To Lou Blair, mother of R. D. Blair $————

"To Joe Dorris Blair, son of R. D. Blair $————."

■ To special issue No. 17 and its explanatory charge, appellant reserved the following exceptions:

"(8) Because nowhere in the court's charge or in connection with such special issue does the court instruct the jury that in arriving at their answer to such special issue they shall not take into consideration as an element of damage the loss to plaintiffs of R. D. Blair's society."

"(10) Because nowhere in the court's charge, or in connection with said issue, does the court instruct the jury that in arriving at their answers to said special issue they shall not take into consideration the loss of companionship of R. D. Blair."

"(12) Because in defining of pecuniary benefits or pecuniary aid, the court instructs the jury that pecuniary aid means 'everything that can be valued in money,' and said definition is too broad, in that it includes grief, loss of society, loss of companionship, and mental and physical suffering, and these elements in law are not included in the definition of pecuniary benefits or pecuniary aid."

These exceptions go only to the point that the court should have instructed the jury not to consider as elements of damage in favor of appellees the loss to them of the society and companionship of the deceased. We overrule the exception that, under the doctrine of Isbell v. Lennox, 116 Tex. 522, 295 S.W. 920, the exceptions were too general. They clearly pointed out the error assigned—that the charge failed to instruct the jury not to consider the loss of the society and companionship of R. D. Blair as elements of damage.

■ It is our conclusion that the charge was affirmatively erroneous in not excluding from the consideration of the jury the elements of damage assigned by these exceptions—the loss of the society and companionship of the deceased. The general rule on the affirmative exclusion of specific elements of damage is thus stated by 33 Tex.Jur. 214:

"In an action for wrongful death it is important that the jury should not only be charged to allow a recovery as authorized

by the language of the statute, but that they should be instructed also as to elements for which no recovery can be allowed. An instruction is erroneous which is so worded that the jury may deduce therefrom that they are authorized to award damages for other than the pecuniary loss sustained by the plaintiff through the death.

"The charge should expressly exclude from the jury's consideration the elements of grief, loss of society, mental pain and anguish; and the court's failure to do so is affirmative error. If objection is made to the charge upon the ground that such elements are not excluded, the defendant is not required to request further instructions excluding them; and this is the rule although the defendant made no objection to the verdict as being excessive.

"It is error also to charge the jury that they may now allow anything by way of consolation or for any sorrow or anguish, without at the same time charging that nothing may be allowed for loss of companionship."

However, the authorities recognize that this general rule of exclusion has application only where the measure of damage as submitted is broad enough to include the elements of damage complained of by the exceptions. Thus, the Commission of Appeals, Judge Critz writing the opinion, in Thurman v. Chandler, 125 Tex. 34, 81 S. W.2d 489, 492, approved the following charge: "Defendants objected to the above issue on the ground: (a) That the same was too broad and permitted the jury to consider elements of damages not plead; (b) that it permitted the jury to find damages in law not recoverable by the wife and children of the deceased in an action for death; (c) that it gave the jury no guide in determining the proper compensation for the loss of support and maintenance; and (d) *that it failed to instruct the jury that no recovery could be had for grief, sorrow, and loss of companionship."* (Italics ours.)

In overruling the exception, Judge Critz said: "It is our opinion that the question as submitted was not affirmatively erroneous. It submitted the issue of damages for 'loss of support and maintenance' only. It said nothing about grief or sorrow, but confined the matter of damages to 'loss of support and maintenance.' Our special issue statutes prohibit general charges and confine the charge of the court to the submission of 'such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render the verdict on such issues.' All of the objections to this charge, except the one under (d) above, were too general to call the court's attention to any supposed defect of omission or commission in the charge, and the objection under (d), as worded, would indicate to the court that defendants desired a general charge, not a mere definition or explanation. The matter as presented shows no error on the part of the trial court. On another trial, if defendants desire the phrase 'support and maintenance' defined, they may properly so indicate to the court."

Texarkana & Ft. S. Ry. Co. v. Frugia, 43 Tex.Civ.App. 48, 95 S.W. 563, 567, writ refused, is also in point. In that case the court said: "The eighth assignment of error complains of the tenth paragraph of the charge, which declares the measure of damages as follows: 'If in the event you find for plaintiff under the instructions herein given you, *you will assess the damages for such a sum of money as, if paid now, would fairly compensate the plaintiff and said minor children for the pecuniary loss, if any, sustained by reason of the death of the said Zeb Frugia'*—then follows a form of the verdict. It is urged against this part of the charge that 'it does not exclude from the jury the idea that they could allow, as pecuniary loss, damages for loss of the society of the deceased, nor damages for grief plaintiffs may have suffered from the death of deceased, and the jury is not by the charge restrained from allowing damages for such loss.' The charge is not subject to the objection, for it logically excludes everything except compensation for pecuniary loss, and can by no principal of construction be held to include loss of society of the deceased or grief plaintiffs may have suffered from his death. What is not comprehended, expressly or implied, in a proposition is logically excluded." (Italics ours.) No definition was given of "pecuniary loss"; no words of inclusion were given, and therefore it was not necessary to submit words of exclusion.

We quote as follows from Chicago, R. I. & G. Ry. Co. v. Trippett, 50 Tex.Civ.App. 279, 111 S.W. 761, 762: "The charge on the measure of damages, to which the first error is assigned, was as follows: 'As to the plaintiff, Mrs. W. W. Trippett, you

are instructed to return a verdict in her favor, and *assess her damages at such a sum of money as in your judgment from all the facts and circumstances in the case will reasonably and fairly compensate her for the pecuniary aids and benefits she had a reasonable expectation of receiving from said W. W. Trippett had he lived,* also, the reasonable and necessary expense incurred on account of the burial of deceased; but you will exclude from your consideration in estimating the damages any mental distress, if any, incurred because of his death.' It is insisted that this charge was misleading, in that it excluded compensation for mental distress without also excluding compensation for loss of society and companionship, in support of which the following cases are cited: International & G. N. Ry. Co. v. McVey [99 Tex. 28], 87 S.W. 328, and International & G. N. Ry. Co. v. Glover, Tex.Civ.App., 88 S.W. 515. The charge condemned in the McVey Case is distinguishable, we think, from the charge above quoted, in that, instead of distinctly limiting the compensation to 'pecuniary aids and benefits,' it directed the jury to allow the plaintiffs such amount as would 'fully compensate them for the actual damages, if any, sustained by them, as shown by the evidence,' and such as would be 'fairly proportioned to the injury sustained,' which was followed by the following language, held to be misleading in that connection: 'But you will not allow the plaintiffs anything by way of solace for the death of said Edward McVey, or for any sorrow or anguish suffered by them as result of such death.' We are unable to so distinguish the charge in question from the charge condemned in the Glover Case, but that decision was rendered by the Court of Civil Appeals for the Third District on motion for rehearing in deference to the opinion of the Supreme Court in the McVey Case, in which the decision of the same Court of Civil Appeals had just been reversed. In other words, the Court of Civil Appeals felt constrained in the Glover Case to follow the decision of the Supreme Court in the Mc-Vey Case, but we are inclined to the opinion that the charges in the two cases were distinguishable, and, while the charge in the case before us is perhaps not to be distinguished from the charge in the Glover Case, it is, we think, distinguishable from the charge in the McVey Case, and, while we are thus perhaps brought in conflict with the decision of the Court of Civil Appeals as finally rendered on motion for rehearing in the Glover Case, we are inclined to agree with the views expressed by that court on original hearing in both of those cases but are not in conflict with the decision of the Supreme Court in the McVey Case, if there is ground for the distinction we have made between the charge in that case and the one above quoted." (Italics ours.)

We have quoted extensively from these cases because appellees rely upon them in support of their charge.

Appellees contend in the case at bar that the measure of damages was submitted simply on the issue of "pecuniary loss," and that "pecuniary loss" means "a loss of money or of something by which money or something of money value may be acquired." The abstract definition of the term "pecuniary loss" is not the point in this case because, as appears on the face of the charge, the court summarized certain elements as constituting pecuniary loss on the issues made by Mrs. Hulde Blair; and certain elements as constituting "pecuniary aid" or "pecuniary benefits" on the issues made by the children. The court did not rest his charge at that point but undertook affirmatively to define pecuniary benefits or pecuniary aid, enumerating in an affirmative way the elements as set out in section (c) of his definition. The charge did not even rest at that point but, having enumerated the affirmative elements to be considered by the jury, the court then undertook by section (f) to withdraw and exclude from the consideration of the jury certain other elements— "grief or distress of mind due to the death of R. D. Blair." In Gulf C. & S. F. Ry. Co. v. Farmer, 102 Tex. 235, 115 S.W. 260, 261, condemning the charge: "The jury may give such damages as they may think proportioned to the injury resulting from such death; and the amount so recovered shall be divided among the persons entitled to the benefit to the action, or such of them as shall then be alive, in such shares as the jury shall find by their verdict", Judge Gaines, speaking for the Supreme Court, said: "It is important therefore, in an action of this sort that the jury should not only be given instructions to allow a recovery as authorized by the language of the statute, but that they should also be instructed for what elements no recovery can be allowed."

The following charge was given in International & G. N. Ry. Co. v. McVey, 99 Tex. 28, 87 S.W. 328, 329: "If you find from the evidence and under the charges of the court for the plaintiffs, you will assess their recovery of damage at such amount, if paid now, fully compensate them for the actual damages, if any, sustained by them, as shown by the evidence, and such as is fairly proportioned to the injury sustained, if any; but you will not allow the plaintiffs anything by way of solace for the death of said Edward McVey, or for any sorrow or anguish suffered by them as result of such death." Condemning that charge, Judge Gaines, speaking for the Supreme Court, said: "This instruction, as we construe it, means merely to exclude a recovery by the plaintiffs of any compensation for the grief caused by the death of the husband and father. It does not exclude compensation for the loss of the society or companionship of the deceased, which, in the opinion of some, if not all, of the jurors, may have constituted the most serious injury to the wife at least. Such being the case, to exclude one improper element of the damages and not to exclude another tends rather to aggravate than to alleviate the tendency of the charge to mislead. 'The mention of one thing is the exclusion of another,' is a rule in the construction of written instruments. It is no less a rule of common sense, and one which suggests itself to the ordinary mind, when construing language, either written or spoken, to which it is applicable. For example, let us suppose that during the deliberation of the jury in this case a suggestion had been made as to giving compensation for the grief of the plaintiffs on account of the death of their relative, the answer would have been that the court had instructed the jury not to give damages on that account. Had the loss of society next been suggested, the answer would have been as ready and as conclusive that the court had not excluded that matter by its charge, and therefore the jury should consider and include damages, if any, on that score."

The following charge was before the Commission of Appeals in Hines v. Kelley, 252 S.W. 1033, 1034: "If your verdict is in favor of plaintiff, Saletia Kelley, you will assess her damages at such sum as you believe from the evidence will fairly compensate her for her alleged damages, if any, shown by the evidence to have been sustained by her by reason of the negligent injury and death of the said Claude Kelley by the defendant. *But in estimating such damages, if any, you will consider her pecuniary loss only.*" Citing the McVey and Farmer cases, supra, Judge McClendon writing the opinion for the Commission of Appeals, condemning this charge, said: "It will be seen from the above quotations from the McVey and Farmer Cases that the Supreme Court has held distinctly that a general charge, couched in the language of the statute, is misleading and affirmatively erroneous, if the elements of grief and loss of society are not expressly excluded from the jury's consideration. The statute does not use the expression 'pecuniary loss.' In determining what elements are and what elements are not embraced in the statute, the Supreme Court refers to the former as pecuniary losses, and the holding of the Supreme Court, in applying this expression to the elements it is held to embrace, seems to accord with the decisions in other jurisdictions, where recovery is expressly limited by statute to pecuniary loss or damage. Carter v. Railway Co., 76 N.J.L. 602, 71 A. 253, 19 L.R.A., N.S., 128, 16 Ann.Cas. 929. In passing upon the sufficiency of the charge, however, the Supreme Court clearly indicates that the improper elements themselves must be excluded—specifically, and not by some general expression descriptive of those elements, which may not be clearly understood by one unfamiliar with the legal interpretation of that expression. To the trained legal mind there is a marked distinction between loss by a child of its parents' care, nurture, and education, and loss of the parents' society and companionship, from the viewpoint of their pecuniary value, although each may be equally incapable of reduction to a monetary equivalent by any accurate method or certain rule or criterion. The former has a tangible value in fitting the child for the duties and responsibilities of life; while the value of the latter rests more properly in the emotions, sentiments, and feelings. We hardly think that the average juror could be expected, without aid from the court, to give to the expression 'pecuniary loss' a meaning which would necessitate, in a proper case, the drawing of such distinction. To one possessed of the common feelings and sentiments of humanity, which control the actions of all well-disposed persons, the grief of a mother for an obedient and dutiful son, upon whom she is dependent, and the loss of his society and companion-

ship, are among the most potent and compelling realities. It was the clear purpose of the Supreme Court in the McVey and Farmer Cases to hold, we think, that a charge which did not expressly exclude these elements from the jury's consideration was misleading and afforded ground for reversal."

█ It is clear to us that by its definition of "pecuniary loss," including certain elements of damage and excluding others, the trial court brought his definition directly within the condemnation of the Mc-Vey, Farmer and Kelley cases, supra, and that it was affirmative error, on appellant's exceptions, not to exclude from the consideration of the jury as elements of damage the loss to appellees of the society and companionship of the deceased.

█ For an additional reason, it was error not to exclude loss of society and companionship; having entered the field of exclusion, it was the duty of the court to exclude all items which, on the face of the record, could have been considered by the jury in estimating damages. That point is made clear by Judge Gaines in the McVey case.

From what we have said, it follows that the judgment for $11,000 in favor of appellees, against which appellant's exceptions were directed, must be reversed and the cause remanded for a new trial.

█ Appellant's second point is against the following argument to the jury by appellees' counsel. We give appellant's fourth and fifth assignments of error:

"4. The defendants should be granted a new trial herein because Mr. W. E. Bell, one of the attorneys for plaintiffs, in his opening argument to the jury, argued to the jury as follows:

"'And you will have to find the answers to the issues to determine whether or not there was any negligence on the part of the Gillette Motor Transport, and, if there was no negligence on the part of the trucking company, that widow will get no damages,' the same being an appeal to the jury's sympathy, highly prejudicial, inflammatory in its nature, advised the jury of the effect of their answers, and appealed to the sympathies of the jurors to answer said issues in order that plaintiffs might recover.

"5. These defendants should be granted a new trial herein because Mr. W. E. Bell, one of the attorneys for the plaintiffs, in

his opening argument to the jury, argued to the jury as set out in the above and foregoing Ground No. 32; whereupon, counsel for defendants objected to such argument and moved the court to instruct the jury not to consider such argument, but, nevertheless, the said Mr. Bell continued to argue to the jury, as follows:

"'The widow and children have certain rights the law gives them, and it is up to you to decide whether or not they have those rights or not.'"

We overrule, without discussion, the contention that the argument brought forward by the fourth assignment was "an appeal to the jury's sympathy, highly prejudicial, and inflammatory in its nature." The only serious point that could be made against the argument is the suggestion that it advised the jury of the effect of its answers. This point has given us serious consideration, but on a careful review of the entire charge we are convinced that the point is not well taken. The charge submitted the issues of negligence plead by appellees against appellant, the issues of contributory negligence plead by appellant against appellees, and the issue of unavoidable accident. So, had the jury found all the issues of negligence in appellees' favor, yet appellees could have lost their case on the answers to the other issues. The jury could not have construed the argument of appellees' counsel as a statement to them that the findings of negligence against appellant would constitute, independent of the other issues, the basis of a judgment against appellant. Promptly, the court instructed the jury on appellant's objection not to consider this argument. If the argument was erroneous, considering its nature and the nature of the court's charge, the error was cured by the court's instruction.

█ No serious contention could be made that the argument complained of by the fifth assignment was erroneous. The widow and children did have certain rights given them by law and their rights were committed to the jury by the court's charge. The dullest man living would have known that it was a part of his prerogative as a juror to decide, in the language of the argument, "whether or not they have those rights or not."

This brings us to the tender of remittitur filed by appellees. The reversal of the judgment to the extent of $11,000 includes the tender of remittitur of the $128. The

tender of the remittitur by the surviving wife of the sum of $1,750 for damages for the personal injuries suffered by her rests on different grounds. The tender was made by Mrs. Blair, but not accepted by the court; the order of the lower court sent the tender to this court for review. Appellant has not briefed any proposition to the effect that the judgment in favor of Mrs. Blair for $1,750 was in any respect erroneous, except in so far as its assignment right rest upon improper argument of appellees' counsel, which we have overruled. Nor has appellant made any assignment against the refusal of the court to accept the tender, nor against the order of the court sending the tender to this court for review. It follows that the tender of remittitur cannot avail appellant in the condition of the record, and as to the $1,750 the judgment of the lower court must stand as if no tender had been made. As to this item, no error is shown.

The judgment of the lower court is reversed and remanded as to the item of $11,000; affirmed as to the item of $1,750. Reversed and remanded in part; affirmed in part.

### On Rehearing.

Appellees' motion for rehearing is overruled. Under and in compliance with Article 2227, R.C.S., appellees filed the following remittitur: "Now comes the plaintiff, Hulde E. Blair, by her attorneys of record, and offers to remit all of the damage awarded to her under Special Issue No. 17–A, same being in the amount of Seventeen Hundred Fifty ($1750.00) Dollars. Plaintiff also offers to remit the sum of One Hundred Twenty Eight and 25/100 ($128.00) Dollars, being the amount plead as costs of funeral expenses and as an item of damage under Special Issue No. 17, and asks that this amount be taken from the amount awarded to her under Special Issue No. 17. These offers to remit under Special Issue No. 17–A are made without admitting error in submitting Special Issue No. 17 or Special Issue No. 17–A." Under Article 2227 the trial court had no discretion to accept, reject, or modify the remittitur. The filing of the remittitur invoked section 3 of Article 2227: "Execution shall issue for the balance only of such judgment."

We grant appellants' motion for rehearing as against our order affirming the judgment for the amount of $1,750, and on that issue we grant appellants' prayer "that the judgment heretofore rendered in this cause be set aside, and that this cause be reversed in its entirety and remanded for a new trial."