GEORGE T. PRICE vs. CHARLES WARNER CO.

*Damages for Personal Injuries—Duties of Electric Street Railways, and the Public, at Street Crossings—Negligence— Contributory Negligence.*

1. In the trial of an action for personal injuries caused by a collision between a wagon and a street car the plaintiff, the motorman, having stated that the car was run on schedule time, may be asked if the car was on time at the time of the accident.

2. The plaintiff may describe his injuries and how they affect his feelings, what pain and suffering he endured and what he now endures, but he cannot speculate as to how the injuries may affect him hereafter. If anyone can do this, it is a skilled physician.

3. It is not competent to show that the plaintiff was habitually careful in keeping his car in order or in handling his car, before the other side attempts to show that he was an incompetent or careless man.

4. The question asked a witness, "You have stated that when you saw the driver put whip to the horses and the proximity of the car that there was bound to be a collision, state why you say this?" is a conclusion upon the facts and therefore inadmissible.

5. A witness having stated that the driver of defendant's team was arrested and had a hearing before the Municipal Court for reckless driving and being asked on cross examination, "What was done with the charge?" —the question was held to be irrelevant and not admissible.

6. It is not competent to ask a witness if he has made any observation of the time it will take a car to go from building line to car tracks with the horses on a walk, or to ask the witness whether he ever was present at a test made to show in what space the car could be stopped, when the obser-

vation was not made at the place of the accident, for it would permit the witness to state the result of an observation made under different circumstances without all the conditions that were present upon the occurrence of the accident.

7. The degree of care differs in different cases. Greater care is necessary in crossing a road where the cars run at a high rate of speed and close together than when they run at less speed and remote from each other, and also when the view at the crossing is obstructed or is in a neighborhood where there is much noise and confusion. In like manner a railway company is held to greater caution in the more thronged streets of the city than in the less obstructed parts thereof.

8. It is the duty of persons crossing a street railway track to make reasonable use of all their senses for the prevention of accident. If the approach to a crossing is by a steep down-grade it is the duty of the motorman to make the descent at such reasonable speed as not to put the car beyond his control, and as the danger of collision increases if he sees or can see the danger, it is his duty to use all the means in his power to check or stop the car.

9. The right of a street railway company within its lines is superior to that of other users of the street, but the public using due care have the right in vehicles or on foot to cross the railway tracks as well within the blocks as at street crossings. There is, however, this difference : The company has knowledge that at street crossings a larger number of persons and vehicles are usually found crossing the track than at other places and this imposes upon the company the need of greater care at street crossings than where the danger is less.

*( January 3-6, 1899.)*

LORE, C. J., and SPRUANCE and GRUBB, J. J., sitting.

*John Biggs* for plaintiff.

*William S. Hilles* for defendant.

Superior Court, New Castle County, November Term, 1898.

ACTION FOR DAMAGES (72 to November Term, 1897) for personal injuries to the plaintiff, alleged to have been incurred in a collision between an electric car of the Wilmington City Railway Company, of which the plaintiff was then a motorman, and a loaded coal wagon of the defendant, then in charge of one of its drivers,

at the intersection of Tatnall and Fourth streets, in the City of Wilmington, on the eleventh day of August, 1897.

The plaintiff contended, and produced evidence tending to show, that on the date of the accident, while acting as motorman on one of the cars of the said company, he was going down quite a steep hill on Fourth street, between West and Tatnall, with a small summer car on which were a number of passengers ; that while so coming down with the car under his control, at a slow rate of speed, ringing his gong in the front of the car, when he got a little more than half way down the hill he noticed a coal wagon, loaded with bags of coal, with two horses attached, driven by a colored man, coming up Tatnall street, being the next street east of said West street. That the man who was driving the wagon kept on up Tatnall street until he got nearly to the crossing, the horses having passed over the foot-way crossing Tatnall street at Fourth, when the driver checked the horses, coming nearly to a standstill, the plaintiff meanwhile continuing gradually down the hill, with the car under his control at a moderate rate of speed. That when the plaintiff with the car got within fifteen or twenty feet of the driver of the wagon, the latter suddenly whipped up his horses and drove immediately in front of the car. That the plaintiff had both brakes applied and used every effort to stop the car, but he was then so close to the wagon that it was impossible for him to stop it, and the car consequently struck the wagon somewhere about the front part of the hind wheels, mashing the front of the car in on the plaintiff, breaking both bones of his left leg, striking him upon the chest and producing hemmorrhage of the lung. That he was taken to the Homeopathic Hospital, where he remained in a comatose or delirious condition for about ten days, during which time he was spitting blood and the prospects of his recovery were doubtful. That after remaining at the Homeopathic Hospital for six weeks, he was discharged, and subsequently tried to do light manual labor of different kinds, but was unable by reason of his physical condition to perform said work ; and that he has continued to suffer from the time of receiving said injuries until the present time.

Evidence was produced tending to show that the car and

tracks were in good condition ; also, that the driver was slightly intoxicated at the time of the accident.

The defendant produced evidence tending to show that the driver was not intoxicated, and contended that there was no negligence on his part, or if there was any, that the collision was not the result of such negligence, but was occasioned by the negligence or recklessness of the plaintiff in not checking or stopping the car, as the defendant contended the plaintiff could have done, before it came in contact with the wagon.

The driver admitted that he was thoroughly familiar with the scene of the accident, knew that the railway tracks were there, but did not look for or see the car approaching until his horses were upon the tracks, when his attention was called to the approaching car by a man sitting beside him on the wagon. That he then whipped up his horses in order to get over the tracks, but that it was too late to avoid the accident.

The wagon in question was proved to be sixteen feet long and the horses ten feet.

During the course of the trial the following questions were objected to and ruled upon.

After stating that the car was run on schedule time, the plaintiff was asked by Mr. Biggs, if the car was on time at the time of the accident. This was objected to by Mr. Hilles as irrelevant.

SPRUANCE, J.:—We think the question is a proper one.

Q. "Do you feel that you will ever again be able to do a good day's work, or recover from these injuries?"

Objected to by Mr. Hilles as calling for the opinion of the plaintiff, he not being an expert upon the subject matter inquired about.

Mr. Biggs contended that the plaintiff was the best witness to answer as to his own feelings.

SPRUANCE, J:—We do not think this question is admissible. It is competent for this plaintiff to describe, as he has with great detail, the injuries, and how they affected his feelings ; what pain and suffering he endured, and what he now endures. But he is

now asked to go further ; not to describe his present condition, nor his condition at any time, but to speculate as to the future. He is not competent to do so. If any one is qualified to do this, it is a skilled physician who has before him all the facts as to the man's injury, and as to his present condition and feelings. This plaintiff cannot speculate as to how the injuries may affect him hereafter.

The witness, Elisha F. Cullen, was asked by Mr. Biggs : "Was this plaintiff, George T. Price, careful at all times to see that his car was in order?"

Objected to by Mr. Hilles as irrelevant, and also that it was attempting to anticipate the defense, there being nothing so far to show that the plaintiff was not a careful man.

SPRUANCE, J.:—It has been testified that this man was careful in handling the car at the time of the accident. Is it competent now to show that he was habitually careful? We think not, as there has been no attempt on the other side to show that he was not competent. We have not arrived at that point yet: It is material in this case whether the apparatus that he handled was in good condition, and whether on that day he handled it properly, carefully and skillfully. So far, the direct testimony is in the affirmative upon both of these points. It will be time enough to try the question as to whether this plaintiff was habitually careful when the other side attempts to show that he was an incompetent or careless man ; but at this stage of the case we think the question is not admissible.

The witness, Harry McCadden, was asked by Mr. Biggs the following question : "You have stated that when you saw the driver put whip to the horses, and, the proximity of the car, that there was bound to be a collision ; state, if you please why you say that?"

Objected to by Mr. Hilles, who contended that the witness could not state by whose fault, the collision occurred, that being a question which the jury was empaneled to try, but could only state what he saw.

SPRUANCE, J :—The question is overruled. The witness can describe the car, the position of the wagon, and what was done

by the motorman and the driver, etc. It is for the jury to arrive at a conclusion upon the facts as to how the accident was produced. We think that this question seeks not so much the facts which the witness saw, as the operation of his mind, which is not material in this case.

GRUBB, J :—I concur in the decision rejecting this testimony. You are practically asking the witness to give his opinion as to the cause of the accident, the question amounts to that. He can state all the facts, from which the jury may infer the conclusion as to the cause of the accident, but he cannot state his opinion or his conclusion from the facts he gives, as to what was the cause of the accident. On that ground I think the question is not admissible.

The plaintiff excepted.

The witness, Robert W. Chambers, after stating that the driver of the defendant's team was arrested and had a hearing before the Municipal Court, upon the charge of reckless driving, was asked by Mr. Hilles in cross examination, " What was done with the charge ? "

Objected to by Mr. Biggs, as irrelevant.

SPRUANCE, J :—It has nothing to do with this case. It is not material what the magistrate did or did not do, upon that charge, and we rule the question out.

The defendant excepted.

William T. Church, a witness for the plaintiff, a locomotive fireman on the Baltimore and Ohio Railroad, and a machinist ; after stating that he stood and watched the car in question, coming down Fourth street hill, from West to Tatnall, just prior to the accident, and that in his judgment the car was going about five miles per hour—was asked by Mr. Biggs, " Are you safe in saying you think it did not exceed five miles per hour?"

Objected to by Mr. Hilles, on the ground that the plaintiff was cross examining his own witness.

SPRUANCE, J :—We think the question is a proper one.

The defendant excepted.

Edward T. Warner, the president of the defendant company was asked by Mr. Hilles the following question : "Have you

made any observation of the time it will take a wagon to go from the building line at Fourth and Tatnall streets, that is on the southern side of Fourth street, with the horses on a walk, to the track of the Wilmington City Railway Company?''

Objected to by Mr. Biggs as irrelevant. It must be confined to this particular team, at the time of the accident.

*Mr. Hilles* contended that all that was necessary, was that the conditions should be similar, and claimed that the conditions were similar, according to the testimony.

SPRUANCE, J :—We do not think that this question is proper. If it was answered in the affirmative it would be immaterial, because it does not lay the foundation for anything. In other words, it does not make any difference what Mr. Warner's observations were about the speed with which the horses drawing a wagon would walk up there. Some horses go faster than others; The result of any observation he might make about some other wagon, would be wholly immaterial. He was not at the scene of the accident, and does not know, of his own knowledge, how fast the wagon was approaching the track. It is an attempt to establish a standard as to how fast, horses would walk up there. That is a varying quantity, and it is impossible to establish that standard by any such method as this.

*Mr. Hilles* then asked the same witness this question, ''Were you ever present at a test which was made on a hill steeper than the hill between West street and Tatnall street, on Fourth, with the tracks dry and with the car going at a speed of upwards of five miles per hour, and with a car at least as heavy as the car mentioned in this case, and if so, in what space did that experiment show that the car under these conditions could be stopped?''

Objected to by Mr. Biggs as irrelevant, the conditions not being identical, also on the ground that Mr. Warner was not an expert on the subject matter inquired of, and therefore could not testify in relation thereto.

SPRUANCE, J :—Mr. Warner is not called as an expert, and this particular observation was not at the scene of this accident,

and it seems to us, it would open the door very wide to permit him to state the result of an observation, made under different circumstances, without all the conditions that were present upon the occasion of the accident. We therefore rule the question out.

The defendant excepted.

During the course of the trial, at the joint request of counsel, the jury were allowed to visit the scene of the accident in charge of the bailiff—one member being excused at his own request.

When the evidence on both sides was concluded, Mr. Hilles suggested that while the law on the case was being discussed, the jury be discharged or excused from sitting.

Mr. Biggs objected on the ground that it was irregular.

SPRUANCE, J :—We had better proceed in the regular way.

The court charged the jury, upon the various propositions of law, raised by the prayers of the respective counsel, as follows :

SPRUANCE, J., charging the jury :

Gentlemen of the jury :—This is an action brought by George T. Price, the plaintiff, against Charles Warner Company, a corporation of this State, the defendant, to recover damages for personal injuries to the plaintiff alleged to have been incurred in a collision between an electric car of the Wilmington City Railway Company, of which the plaintiff was then the motor-man, and a loaded coal wagon of the defendant then in charge of one of its drivers, at the intersection of Tatnall and Fourth streets in this city, on or about the eleventh day of August, 1897.

It is claimed by the plaintiff that the collision was caused solely by the negligence or recklessness of the servant of the defendant in driving the wagon upon the railway track in front of the approaching car ; that it was not due to any fault or neglect of the plaintiff ; and that he exercised due care and diligence in attempting to avoid the collision, but was not able to do so.

It is claimed by the defendant, that it had the right to cross the railway track when and as it did, or attempted to do ; and that there was no negligence on the part of its driver, or if there was any, that the collision was not the result of such negligence,

but was occasioned by the negligence or recklessness of the plaintiff in not checking or stopping the car before it came in contact with the wagon.

Fourth and Tatnall streets are public highways. The railway company and its servants have the right to use Fourth street for the operation of its railway thereon, and the public generally have the right to use said street for the ordinary purposes of a public highway.

In this joint use of the street life and property would be in constant peril unless the railway company and the general public were held to due and proper care in the exercise of their respective rights.

What is due and proper care must depend upon the particular facts of each case, and general propositions, unless limited and qualified by the circumstances under consideration, are apt to be misleading.

Upon this subject this court in a recent case (*Brown vs. Wilmington City Railway Company, 1 Pennewill, 335*) said : "We are not prepared to lay down in this case any absolute rule as to what precise acts of precaution are necessary to be done or left undone by persons who may have need to cross electric city railways. Such acts necessarily must depend upon the circumstances of each particular case. The degree of care differs in different cases. Greater care is necessary in crossing a road where the cars run at a high rate of speed and close together than where they run at less speed and remote from each other. In like manner where the view at the crossing is obstructed, or in a neighborhood where there is much noise and confusion, greater care is necessary than in places where the view is unobstructed and with quiet surroundings. In like manner a railway is held to greater caution in the more thronged streets of the densely populated portions of the city than in the less obstructed streets in the open or suburban parts. From these illustrations manifestly the care to be used depends largely upon the circumstances of each case. It would therefore be difficult, if not dangerous, to lay down any inflexible rules.

"The general rule upon this subject is, that persons so crossing a street railway track are bound to the reasonable use of all their senses for the prevention of accident, and also to the exercise of all such reasonable caution as ordinarily careful and prudent persons would exercise in like circumstances. This rule is plain and well settled ; and is to govern you in the determination of this case."

A person approaching a railway crossing with which he is familiar, is bound to avail himself of his knowledge of the locality and act accordingly. If the approach of the railway to the crossing be down a steep grade, whereby it is more difficult to stop or check a car, the driver of a vehicle should exercise more care than might be necessary where the approach of the railway was by a slight decline, upon a level, or by an ascending grade.

If as he approaches the crossing his line of vision is unobstructed, he is bound to look for approaching cars in time to avoid collision with them, and if he does not look, and for this reason does not see an approaching car until it is too late to avoid a collision, he is guilty of negligence.

It has been held by this court that the right of a street railway company, within its lines, is superior to that of other users of the street (*Maxwell vs. Wilmington City Railway Company, 1 Marvel 199 ; Brown vs. Wilmington City Railway Company, 1 Pennewill, 335.*)

The reasons assigned for this are, the public need of safe and reasonably rapid transit by street railways, and the limitations upon the movements of the cars by reason of their being confined to a track, and incapable of being turned aside to avoid collisions.

The broad assertion of the superior right of a railway company may be subject to abuse, and should not be understood as exempting it in any case from the exercise of due and proper care.

It would be a fearful doctrine that persons in charge of street cars have the right to run down persons or vehicles when-

ever upon the track, even when there unlawfully or negligently —if by the exercise of reasonable care on the part of those in charge of the cars, collision could be avoided.

It is contended that this doctrine of the superior right of a railway company has no application to street crossings. It would certainly be contrary to public policy and in violation of the rights of the railway company to allow its tracks to be blocked at street crossings by the negligence of drivers of vehicles, but a correct understanding of the rights and duties of both parties will avoid any confusion upon the subject.

The public, using due care, have the right, in vehicles or on foot, to cross the railway tracks, as well within the blocks as at street crossings. There is, however, this difference : The company has knowledge that at street crossings a larger number of persons and vehicles are usually found crossing the track than at other places, and this imposes upon the company the need of greater care at street crossings than where the danger is less.

The company and the traveler are required to use such reasonable care as the circumstances of the case demand—an increase of care on the part of both being required when there is an increase of danger.

"The right of each must be exercised with due regard to the right of the other, and the right of each must be exercised in a reasonable and careful manner, so as not unreasonably to abridge or interfere with the right of the other." ( *O'Neil vs. Dry Dock Company* (*N. Y.,*) *29 N. E. Rep. 84; Omaha Street Railway Company vs. Cameron* (*Neb.*), *61 N. W. Rep. 606.*)

In this case it was the duty of the plaintiff to exercise such care to avoid collision with the wagon of the defendant as the circumstances required

If the approach to the crossing was by a steep down grade, it was his duty to make the descent at such reasonable speed as not to put the car beyond his control ; and as the danger of collision increased, if he saw, or could see the danger, it was his duty to use all the means in his power to check or stop the car.

And if the plaintiff failed in his duty in either of these respects he was guilty of negligence and cannot recover, even if

the wagon of the defendant was negligently driven upon the track.

On the other hand the plaintiff was not required to perform an impossibility, and if in the exercise of reasonable care it was impossible for him to avoid the collision, he is entitled to recover, if you find that the wagon was negligently driven upon the track.

The plaintiff and the driver of the wagon had each the right to presume that the other would act as a reasonable man—considering all the circumstances under which he was placed—until the contrary appeared.

If you shall conclude that the injuries to the plaintiff were occasioned by the negligence, as defined by us, of the defendant's servant, the driver of its wagon, and without the fault or negligence of the plaintiff, the defendant company is liable in this action, the master being responsible for the negligent conduct of his servant in the course of his employment.

The facts of this case are not such as to warrant you in finding a verdict for punitive or exemplary damages.

If your verdict should be for the plaintiff, you should award him such sum by way of damages, as you may conclude from the evidence to be an adequate compensation for his pain and suffering of mind and body, loss of bodily and mental powers, nability to perform ordinary labor and incapacity to earn money, in the past or in the future, which are the immediate and necessary consequences of the injuries sustained by him. If such injuries are in your judgment, in view of all the evidence, of a permanent character, you should consider that fact in determining the amount of his damages.

Verdict for defendant.