ANDREW HARRIS v. THE STATE.

No. 371.   Decided May 3, 1911.

**1.—Murder—Practice on Appeal.**

Where the case is reversed on other grounds the court as a rule will not discuss the sufficiency or insufficiency of the evidence.

**2.—Same—Assignments of Error—Practice on Appeal.**

This court does not pass upon assignments of error except when they are based upon bills of exception or grounds of a motion for new trial.

**3.—Same—Evidence—Bills of Exception.**

On trial of murder, if the testimony sufficiently showed that the articles found upon the burned premises, where the alleged homicide took place, were the property of the husband of the deceased and were found recently thereafter in the possession of the defendant, the same was admissible, although several searches were made; but where the bills of exception did not sufficiently show these matters, the court could not intelligently pass thereon.

**4.—Same—Evidence—Experimental Evidence.**

Upon trial of murder it was error to permit a State's witness to testify to an experiment he made as to how the homicide occurred, which was based on speculative and hypothetical theories, and not established on any fact upon which such experiment could have been made.

**5.—Same—Conduct of District Attorney.**

Upon trial of murder, where the court properly sustained an objection to a question of the State's attorney on cross-examination of the defendant, it was improper on part of State's counsel to persist in his question thereafter.

**6.—Same—Evidence—Shorthand Facts.**

Where, upon trial of murder, the evidence showed that the deceased and her husband were probably murdered in their own house and the house burned

down and their charred remains found thereafter, and some of the State's witnesses in testifying to a certain vest found in possession of defendant stated that it resembled a vest worn by the said husband of deceased, etc., but were unwilling to swear that it was the identical vest that they had seen him wear, etc., there was no error in permitting State's counsel to ask the witnesses whether in their best judgment and their opinion it was the vest that they saw said husband wear in his lifetime, which they answered in the affirmative. This was a shorthand rendering of the facts and went more to the weight than to the admissibility of the testimony.

### 7.—Same—Evidence—Stains on Clothing.

Where, upon trial of murder, the State's witness testified that her husband and the husband of deceased wore shirts made out of the same kind of cloth, and that when her husband perspired such perspiration made a stain similar to that which was on the domestic around the truss found with the defendant and introduced in evidence, it was necessary to show the time when this cloth was made into such shirt and that the husband of the deceased had worn the shirt so made for him out of said cloth.

Appeal from the District Court of Washington. Tried below before the Hon. Ed R. Sinks.

Appeal from a conviction of murder in the first degree; penalty, death.

R. Lyles and Monta J. Moore, for appellant.—Upon question of admitting opinion of witnesses as to identity of vest: Drake v. State, 29 Texas Crim. App., 265, 15 S. W. Rep., 725; Powers v. State, 23 Texas Crim. App., 42.

Upon the question of the district attorney's conduct in persisting to ask questions which the court had overruled: Nalley v. State, 28 Texas Crim. App., 387.

C. E. Lane, Assistant Attorney-General, for the State.

PRENDERGAST, Judge.—The appellant was indicted and convicted for the murder of Mrs. Marie Rudolph on May 13, 1909, and the death penalty assessed.

A brief statement only of the case is made. The deceased and her husband were elderly people living on a farm in the country alone. They were last seen alive late in the evening of May 13, 1909, in their field at their home. Sometime during the night their residence was burned, and it seems that no one is shown to have seen the house burn, and the neighbors knew nothing of it until the next morning, when they discovered it had been burned the night before. Two bodies, which the evidence tends to show were the deceased and her husband, were found where the house stood. The lower extremities of both bodies appear to have been entirely consumed by the fire. The other remains of the bodies were so burned as that from the remains alone they could not be identified. However, the evidence as a whole tends sufficiently strong to identify the bodies, and the physicians who examined them the next day testify they were the remains of the deceased and the remains of deceased's husband. The testimony of the

physicians also tends to show that there was no evidence upon the bodies of gun-shot or knife wounds. At least, apparently such were not discovered. Both sides of the skull of the deceased were crushed as if by "some blow with a club or something like that." In the skull of the deceased was also a round hole above the forehead on top of the head. The physicians also indicate that this could have been caused by a bullet, or other round instrument with sufficient force. The head of the husband was also crushed on one side rather to the back of the head.

The appellant lived with a negro woman and negro boy about two miles from the deceased's residence on the road between the residence of the deceased and the little town of Carmine. The appellant was convicted wholly upon circumstantial evidence. As the case will be reversed, it would be improper for us to discuss the evidence or whether or not it is sufficient to sustain the conviction, even though the appellant vigorously contends that it is wholly insufficient and that the judgment should be reversed on that account; and because of the fact that the case will be reversed we will not pass upon whether or not the evidence is sufficient to sustain the verdict.

1. Appellant has made several assignments of error. Some of them are based on matters that are not raised by either bill of exceptions or grounds for new trial in his motion for new trial. This court does not pass upon assignments except when they are based upon bills of exception or grounds of the motion for new trial, or some other such matter as is clearly raised by the record in the court below. Hence, none of the matters raised by appellant's brief, based on such assignments of error, will be considered by us now.

2. Several of the bills of exception attempt to raise, and perhaps some of them do raise properly, the question of the introduction of several articles claimed by the State to have belonged to the husband of the deceased which were claimed to have been found in the trunk of the appellant or in the house where he lived at the time of the killing. Also objection is made to the introduction in evidence of the undershirt and jumper and some other articles claimed by the State to have been found in the trunk of appellant or room where the appellant stayed shortly after the killing, the State claiming that human blood was found on the undershirt, jumper and perhaps other articles claimed to have been the property of the appellant. On this question the evidence, shown by the bills, tends to show that the house and room where the appellant stayed and the trunk of the appellant were thoroughly searched by an officer and others very soon after the killing; that some days later—perhaps a week, ten days, or possibly two weeks —a second search was made. Some of these articles were found on the first and others on the second search. The vest and truss were claimed to have been the property of the husband of the deceased; the undershirt, jumper and other articles were claimed to have been the property of the appellant.

If the evidence sufficiently showed that the vest and truss, or either of them, were the property of the husband of the deceased, and were shown to have been in his possession at the time or shortly prior to the killing, and were found in the possession of the appellant shortly after the killing, such evidence is admissible. It is necessary, however, that the evidence identifying such property as the property of the deceased's husband, and so in his possession, is reasonably sufficient before such testimony would be admissible. The fact that some of the articles introduced claimed to have been the property of the husband of the deceased, and some claimed to have been the property of the appellant, with human blood on them, were not found in the trunk, room or house of the appellant on the first search thereof, would not necessarily prevent their introduction in evidence if properly identified thereafter. Such fact of their not being found on the first search, but were found on the second, would go to the weight of the testimony instead of to its admissibility. Whether or not any of it was the property of the appellant found on the second or other search, or that it was placed in the room, trunk or house where the appellant had stayed by some one else for the purpose of manufacturing testimony against appellant, between the time of the first and the second search, would all be matters for the jury, but the court should certainly control the evidence on these points, so that if not properly accounted for it should be excluded. We can not tell so as to pass intelligently upon these questions as they are now presented by these various bills of exception, because the evidence thereabouts given in the bills is so meager as not to enable us to do so.

3. By appellant's third bill of exception it is shown that the State introduced the witness J. S. Scarbrough. Several typewritten pages of his testimony is given by this bill, and which purports to be all of his testimony on that subject, which bill shows that the court overruled appellant's motion to strike out all of this testimony on the ground, among others, "that it was irrelevant and incompetent, and calculated to prejudice the jury against the defendant; that it was hypothetical, speculative, and without a single established fact upon which to base it."

As stated above, we do not propose to discuss the evidence under the circumstances, but as to this matter we will observe that, from our investigation of the whole record, and the reading of the testimony, that the evidence indicates to us that the deceased and her husband may not have been killed by gun wounds, but instead were killed by some bludgeon, club, or something like that, and after a full consideration of this evidence shown by this bill especially, it is our opinion that the court erred in not excluding it; because the experiment of the witness is based on speculative and hypothetical theories, without sufficiently establishing the facts upon which to have made the experiment to authorize its introduction. It is true that experimental evidence is admissible and sometimes is of a very convincing character,

but in such instances it must always be based upon some facts established in connection with the killing so as to show that such experiments have some basis from the facts upon which to make them.

4.  There are other bills of exception in the record complaining of a question asked the appellant when he was on the stand, even though the court properly refused to permit the appellant to answer it, and to the comments of the district attorney upon the impeaching statements of the witnesses Emma and Lonnie Nickerson, which doubtless will not occur upon another trial.   In all cases—and especially cases of this character, where the death penalty may be inflicted—this court will be loath to permit a conviction to stand where any such improper things occur.   We again insist that the district attorneys will refrain in such matters from asking improper questions, even though answers are excluded, that would tend to prejudice the jury against the appellant, and from making improper comments upon testimony or going out of the record in making their arguments.

5.  By appellant's eighth bill of exceptions it is shown that while Mrs. John Weyand and John Koch and Mrs. Louise Koch were upon the stand testifying for the State, and after each had testified that they did not know whether or not the vest shown to them had ever been the property of John Rudolph, deceased; that said vest resembled a vest they had seen said Rudolph, deceased, wear in his lifetime; that it was made of the same material, and had the same kind of buttons on it and looked like it; and each of said witnesses had, on cross-examination, testified that they were unwilling to swear that the vest was the identical vest that they had seen said Rudolph wear, and that the most they could say was that the vest resembled in color the vest that the said Rudolph wore in his lifetime, and on re-direct examination the district attorney propounded to each of said witnesses the following question: "In your best judgment, in your opinion, is that the vest that you saw John Rudolph wear in his lifetime?"  To which question and answer appellant objected for the reason that these witnesses and each of them had stated upon their direct and cross-examination that they did not know whether or not it was the vest of the said Rudolph, and neither of said witnesses had stated any fact or facts which would entitle them to have or express an opinion as to whether or not that was the same vest that they had seen said Rudolph wear in his lifetime.   The court overruled appellant's objection, and each of the witnesses answered that in their best judgment it was the same vest.

As a general rule the opinion of non-expert witnesses is inadmissible, but there are exceptions to the rule as well established as the rule itself.   One of these exceptions, without question, is to the identity of persons.   As to this the authorities are uniform that the opinion of the witness may be given.   It seems that the authorities also hold that the identity of things or objects is also well established exceptions. To our minds there is as strong, if not stronger, reason for permitting the opinion as to objects and things as to that of persons.   In the case

of Cooper v. State, 23 Texas, 331, our Supreme Court on this question said:

"So, upon a question of identity, I may feel a strong conviction, not, however, amounting to certainty, that a man who stands before me in the courtroom today is the same man whom I knew ten years ago in a distant part of the world; I can not explain to others the grounds of my strong belief, yet this belief amounts to a species of knowledge. If called as a witness, I may express my opinion that the man before me is the same man whom I knew in another place. My opinion is entitled to some weight, because it is the statement of a fact, about which, to be sure, I can not speak with absolute certainty, but yet with so much certainty as, perhaps, to satisfy the minds of others that the thing stated is a fact.

"In all these cases the opinion of the witness is received, because the facts which constitute the cause, from which the opinion proceeds, as an effect, can not themselves be presented or communicated to the mind of a jury, so as to impart to them the knowledge which the witness actually possesses."

Wharton on Criminal Evidence, section 459 (9th ed.), says: "Opinion, so far as it consists of a statement of an effect produced on the mind, becomes primary evidence, and hence admissible whenever a condition of things is such that it can not be reproduced and made palpable in the concrete to the jury. Eminently is this the case with regard to noises and smells; to questions of identification, where a witness is allowed to speak as to his opinion or belief. . . ." This same author, in volume 1 of his work on Evidence, in discussing opinion as admissible, in section 511, says: "A fortiori, whenever a condition of things is such that it can not be reproduced and made palpable in the concrete to the jury, or when language is not adequate to such realization, then a witness may describe it by its effect upon his mind, even though such effect be opinion. Eminently is this the case with regard to noises, and smells, and to questions of identification where a witness is allowed to speak as to his opinion or belief." See also Wharton on Criminal Evidence, section 462, and Wharton on Evidence, 509; 1 Greenl. on Evidence (15th ed.), section 440; 1 Elliott on Evidence, sections 680 and 676; 6 Ency. of Ev., p. 927.

In the case of Tate v. State, 35 Texas Crim. Rep., 231, this court, through Judge Henderson, said: "Appellant objects to the testimony of State's witness Brice, who stated that, in his judgment and belief, he recognized appellant at his house, with several of the Tate boys, about 11 o'clock, the night before the homicide, who came there to borrow a pistol. This testimony, in our opinion, was admissible, and the fact that the witness could not be absolutely certain in his identification of appellant only went to the weight of his evidence, and not to its admissibility."

Again, this court, in the case of Buzan v. State, 59 Texas Crim. Rep., 213, 128 S. W. Rep., 389, says: "We find in the record a bill of

exceptions to the action of the court in permitting the State to prove by the witness Woods that, 'in the opinion of the witness it was defendant's face at the window in the church where the disturbance is alleged to have taken place, and that it was the opinion of the witness that the noise came from that window.' The proof on the part of the State was the congregation had assembled there for prayer-meeting on this night, and that the defendant came to the window and made a peculiar and loud noise and mewed like a cat. This witness Woods testified that he was not acquainted with the defendant on that night, but that the man he saw in the courthouse in his opinion was the man he saw at the window. We can not see how the witness could have expressed it otherwise. He might have stated that it was his belief that this man was the same man seen at the window, but using the word 'opinion' simply expresses the same thing. The bill of exceptions is without merit."

We believe that where the witness has already detailed in full the description of the vest or other article that the witness' then stating that in his opinion and belief, or "in his best judgment" it was the vest worn by Mr. Rudolph, deceased, is a mere shorthand rendering of the facts and is admissible on the question of identity. That an objection thereto goes more to the weight of the testimony than to its admissibility. Such "best judgment," opinion or belief as to the identity may or may not be believed by the jury, just as any other fact testified to by a witness. See also Williams v. State, 60 Texas Crim. Rep., 453; 132 S. W., 345; Holt v. State, 57 Texas Crim. Rep., 432, 125 S. W., p. 573; Crumes v. State, 28 Texas Crim. App., 517. By the question and answer, "best judgment" is meant substantially the same thing as opinion or belief.

6. A question is presented by appellant's ninth assignment of error as to the testimony of Mrs. Louise Koch, wherein it is shown that after she had testified that she and her mother, Mrs. Rudolph, deceased, had bought some blue cloth, and that she had made up the cloth into shirts for her husband, and that Mrs. Rudolph had made up the cloth that she bought into shirts for her husband, and the district attorney asked her to state whether or not, when her husband wore the shirts made out of said cloth, and perspired while wearing said shirts, they would stain his underwear, and would make a similar stain to the stain on the truss that had been introduced in evidence. The appellant objected to this question and answer because it was irrelevant and improper to prove what effect the perspiration of Mr. Koch had upon his shirt. She testified that when Mr. Koch wore his shirts made out of that piece of cloth, and perspired, that the perspiration made a stain similar to the blue stain that was on the domestic around the truss introduced in evidence. It is somewhat questionable whether this testimony was admissible, or not, without going further and showing the time when this cloth was made into such shirts, and the fur-

ther fact that Mr. Rudolph, deceased, had worn the shirts so made for him out of said cloth. The court below, on the trial of this case, can control this question and exclude or permit the testimony as the other facts introduced at the time may authorize.

For the error of the court in not excluding the testimony of Mr. Scarbrough, as shown by the bill of exceptions of appellant, this cause is reversed and remanded.

*Reversed and remanded.*