## DALLAS RY. & TERMINAL CO. v. MOORE et al.

### No. 2685.

Court of Civil Appeals of Texas. El Paso. June 16, 1932.

Rehearing Denied July 7, 1932.

Worsham, Rollins, Burford, Ryburn & Hincks, of Dallas, for appellant.

D. D. Mahon and Joe M. Hill, both of Dallas, for appellees.

WALTHALL, J.

On the night of June 29, 1929, on Forest avenue, in the city of Dallas, Tex., while riding in an automobile driven by Ross Hardin, the automobile turned over, injuring George M. Mitchell, and from which injuries he died within a few hours next thereafter. This suit was filed on July 29, 1929, by Mrs. Etta Moore, joined pro forma by her husband, A. M. Moore, and Maysel Mitchell, against Dallas Railway & Terminal Company, to recover damages alleged to have been sustained by Mrs. Moore by reason of the death of George. M. Mitchell.

On July 12, 1930, Mrs. Etta Moore, joined pro forma by her husband, A. M. Moore, for herself and as administratrix of the estate of George M. Mitchell, filed her second amended original petition against Dallas Railway & Terminal Company, and on which amended petition she went to trial, suing for herself individually and as administratrix of the estate of her son, George M. Mitchell. She bases her cause of action on the accident which occurred on the date as alleged in her original and first amended original petition.

For herself she sues to recover on the ground of an expected contribution to her support from her said son during his life, and as administratrix of his estate. She sues to recover mental pain and anguish, hospital bills, doctor bills, funeral expenses, expense of a tombstone and cemetery lot, and stated the value of each item for which she sues. She alleges that her son was unmarried and left no estate other than his claim for damages against the defendant, Dallas Railway & Terminal Company, growing out of or resulting from the injuries which resulted in his death.

At the time of the accident resulting in the death of George M. Mitchell, the defendant was repairing its street railway tracks between the rails on said track and within twenty-four inches on the outside of such rails on Forest avenue in the city of Dallas. Appellee alleged that in repairing its railway tracks on Forest avenue the track was not even and flush with the rest of the street, and that the car in which the deceased was riding "ran into the said excavation or hole which caused said car to become over-balanced, turning same over and throwing plaintiff's son out upon the pavement," and causing injuries resulting in his death. The negligent acts assigned as causing said accident, and submitted to the jury and upon which the jury made findings, and found substantially as follows, are:

That there were holes caused by excavation in defendant's repair work between the rails on said track and within twenty-four inches on the outside of such rails, at the time and place of the accident; that defendant failed to have around such holes colored warning lights plainly visible; that "such failure was negligence," and a proximate cause of the death of the deceased; that the failure to erect a guard or rail around said holes was negligence and proximate cause of the death of the deceased; that defendant failed to station a watchman near said holes to warn the public; that such failure was negligence and a proximate cause of the death of the deceased; that $6,000, if paid now, will reasonably compensate Mrs. Etta Moore for the pecuniary benefits she had a reasonable expectation of receiving from the deceased had he not died.

On the question submitted as to what sums of money, if paid now, would reasonably compensate the estate of George M. Mitchell, the jury found: As to mental anguish and physical pain, none; for doctor's bills, $50; hospital bills, $14; for a tombstone, $165; for a cemetery lot, $25; for funeral expenses not otherwise included, $536.50.

The jury found that the overturning of the automobile was not the result of an unavoidable accident.

Appellant answered, joining issue upon each of the negligent acts charged. Without stating the several defensive matters pleaded and submitted to the jury, the jury found on each in favor of appellee, and we will discuss them only as submitted in some proposition.

On the jury's verdict the court entered judgment in favor of plaintiff Mrs. Etta Moore, for herself for the sum of $6,000, and in favor of Mrs. Etta Moore as administratrix of the estate of George M. Mitchell, deceased, in the sum of $790, "for the expense of last illness and burial."

From the judgment, the defendant, Dallas Railway & Terminal Company, duly prosecutes this appeal.

Opinion.

One of appellee's attorneys in the closing argument to the jury, without interruption by the court and without same being provoked by opposing counsel, and over objection, said: "All we ask for you to do is to consider how you would do, how you would want somebody to treat your mother if your brother had been killed and left her with three children to support, and you felt that the street railway had caused that injury, and we will be satisfied with that. We only ask what would be equivalent to ten per cent on $6000.00 or $600.00 per year for ten years."

In making the objection to the trial court, and here, appellant submits that the argument

was prejudicial and inflammatory. It is impossible to know what effect an improper remark of counsel in argument has upon the action of a jury in rendering a verdict. We think it should be made to appear that some harm resulted to appellant because of improper remarks or argument before the party at interest should be made to suffer the penalty of a reversal. The courts have uniformly applied some test in determining the effect of improper remarks or argument upon the verdict. It will not be presumed on appeal that the bare fact that an improper remark or argument of counsel was made, though objectionable, influenced the jury. El Paso Electric R. Co. v. Terrazas (Tex. Civ. App.) 208 S. W. 387. Improper argument is ground for reversal only when the verdict is excessive or against the preponderance of the evidence and where there is reason to believe that it affected the amount of the verdict. El Paso Electric Co. v. Collins (Tex. Civ. App.) 10 S.W.(2d) 397; Sinclair v. Stanley, 69 Tex. 718, 7 S. W. 511; International & G. N. R. Co. v. Irvine, 64 Tex. 529. While the Collins Case was reversed, it was on other grounds, and from the statement of the court in the opinion we infer that the remark objected to did not show reversible error.

We have concluded that the remarks of counsel, though improper, did not of themselves necessarily cause the rendition of an improper verdict.

In submitting the tenth special issue, the court asked the jury what sum of money will reasonably compensate Mrs. Etta Moore for the pecuniary benefits, if any, she had a reasonable expectation of receiving from the deceased had he not died. Appellant made seasonable objection to the charge because it failed to instruct the jury not to allow anything for loss or damage on account of grief or sorrow, or for loss of the society, affection, or companionship of deceased, or mental or physical pain suffered by him.

The charge is not open to the criticism made. The charge limited the inquiry of the jury to the pecuniary benefits Mrs. Etta Moore had a reasonable expectation of receiving, which logically excluded every other element of loss or damage. There is no pleading or evidence in the record that could mislead the jury to consider any loss other than the pecuniary benefits submitted. Texarkana & Ft. Smith R. Co. v. Frugia, 43 Tex. Civ. App. 48, 95 S. W. 563; International & G. N. R. Co. v. McVey, 99 Tex. 28, 87 S. W. 328, 329.

The verbiage of our present statute (article 4677) is the same as former article 4704, (3027). It reads: "The jury may give such damages as they think proportionate to the injury resulting from such death." As said by the Supreme Court in the McVey Case, supra, the statute is vague in its terms, in stating the damages that may be recovered,

and said: "The damages which may be recovered under the statute are such pecuniary benefits as the plaintiff had a reasonable expectation of receiving from the deceased had he lived"—citing City of Galveston v. Barbour, 62 Tex. 172, 50 Am. Rep. 519. The court then defined the term "pecuniary benefits," and which definition, under the facts of this case, includes such things only as can be valued in money. So the court had the jury find "what sum of money, if any, paid now in cash" would compensate for the pecuniary benefits, etc. Had the court in the charge used the verbiage of the statute in stating the damages the jury might give, it would then have been necessary in the charge to have excluded elements of grief, loss of society, mental pain, and anguish, etc. But having limited the jury in estimating the damages to the "pecuniary benefits," etc., we think the term used necessarily excludes every element of loss other than the pecuniary benefits.

Appellant insists that the term "pecuniary benefits" has a "peculiar legal significance," which was not clear to the jury and should have been defined in the charge, and the elements of loss, such as grief, loss of the society of the deceased, companionship, etc., should have been excluded. The term is used in its usual and ordinary sense. It is not an expression used in the statute, and we think needs no definition. We have stated our view in discussing another proposition, and need not review the cases referred to.

Appellee alleged, in substance, as an act of negligence causing said injuries to deceased, that in repairing Forest avenue, in violation of a city ordinance, appellant dug out the pavement adjoining the rails of its tracks and dug out a hole, stating its approximate depth, width, and length, and that the surface between and near the rails of its car tracks was not even and flush with the rest of the street, and failed to maintain its street car tracks in a reasonably safe manner, and failed to place warning signs, etc.; that the car in which appellee was riding ran into said excavation or hole, and was thereby turned over, causing the injuries complained of.

Appellant, in answer, after pleading a general denial and after alleging the necessity of tearing out certain parts of the old pavement, and to assemble in the street certain material with which to repair such pavement, alleged that the only excavation or hole in the street in the locality where the automobile was turned over was a shallow place where the surface of the pavement had been removed to a depth of not more than two inches for a distance of several feet along the south rail of the south street car track, and that said excavation had been temporarily refilled with rock and gravel to the level of the surrounding pavement, and that said rock and gravel were of hard surface over which an auto-

mobile could have passed in safety at any lawful rate of speed.

The court submitted to the jury to find whether "there were any holes caused by excavation made by the defendant in its repair work on its tracks on Forest Avenue in the City of Dallas, Texas, between the rails on said street, or within twenty-four inches on the outside of such rails at the time, the place and on the occasion in question." The jury found there were.

█ We have found no issue directly submitting to the jury whether the driver of the automobile drove his automobile on, or into, or across such hole or excavation, or that such hole or excavation in any way caused the automobile to turn over. There are some indirect assumptions of such issue in the issues on proximate cause, but we have found no direct submission of such issue.

Appellant submitted and the court refused to give issues submitting whether "the auto in which Mitchell was riding, prior to overturning, ran into or over any excavation made by the defendant between or within two feet of its tracks on Forest Avenue." Then, conditionally, whether "The defendant * * * did not have such excavation, if any, into or over which said auto ran, prior to being overturned, in such condition that it would have been safe for any auto to travel into and over it at any speed of not more than 20 miles per hour." Again, whether "The auto * * * prior to overturning ran into or over any excavation made by the defendant," etc. Then, if answered "Yes," whether "defendant on the occasion in question, exercised ordinary care to leave such excavation in question as said automobile may have run into, in such condition that it would be reasonably safe for any auto or other vehicle to travel along said street and into and over said excavation at any rate of speed not in excess of 20 miles per hour."

Then follow some requested and refused charges requesting findings whether defendant placed rock or gravel in such excavation, and whether, in placing same in such excavation, defendant did all that a person of ordinary prudence would have done under the same or similar circumstances to make said excavation reasonably safe for a person using Forest avenue with ordinary care for their own safety.

Appellant pleaded negligence on the part of the driver of the automobile in several respects, and also of the deceased. The jury found that the automobile was being driven over twenty miles per hour, which constituted negligence per se under our statutes; such having occurred in the city of Dallas. Also that the deceased was negligent in failing to warn the driver of the automobile to reduce his speed to not more than twenty miles per hour, but, as to the negligence of the driver of the automobile and as to deceased, the jury found that such negligence was not the sole or a proximate cause of the accident.

Appellee's cause of action is based on the theory that the overturning of the automobile was caused by the presence of a hole or excavation made by the defendant along its track, and that the driver of the automobile, in the exercise of ordinary care for his own safety, ran his automobile into such hole or excavation, and, on account of the condition of the pavement by reason of such, his automobile turned over, causing the injuries complained of. We think some issue, such as are embraced in some of appellant's refused issues, should have been given; otherwise it is difficult to know just what negligent act fixed appellant's liability. Appellant further submits that it would be a complete defense to the cause of action as pleaded if defendant left the excavations filled up with rock or gravel, and in such condition that such excavations were reasonably safe for any one to use who were in the exercise of ordinary care for their own safety and were not traveling at an unlawful rate of speed, since the law presumes that every one will obey the law and exercise ordinary care for their own safety; that, as the law does not anticipate or guard against the negligent or unlawful conduct of another, appellant had a right to assume that any vehicle using Forest avenue would use the same in a lawful manner, and, if appellant exercised ordinary care to make the street reasonably safe for a person using same in a lawful manner, it had discharged its legal duty, and would not be liable to one injured while going at an unlawful rate of speed.

Without quoting, there was ample evidence which tended to show that the excavations or holes at the time of the accident were in such condition that an automobile passing over them or driven into such excavations or holes at an authorized rate of speed would not have turned over. Several witnesses testified that, on the night of the accident, they had, in automobiles, and at different rates of speed, some more and some less than twenty miles per hour, passed over the excavations or holes in safety.

We have concluded that the court not having sufficiently submitted the question whether the automobile in which the deceased was riding ran into or over any excavation made by appellant in the paving it was doing on Forest avenue, and whether such excavation caused the automobile to overturn, and whether appellant was negligent under all of the facts and circumstances in having the paving in the condition it was at the time of the accident, the issue submitted in appellant's first tendered charge or a similar charge should have been given. Without some such charge and a finding thereon, it is not made to appear that the excavation or hole in the pavement

had anything to do with the overturning of the automobile, and much of the evidence as to the condition of the paving has no application, and is confusing.

The driver of the automobile and the deceased were each found negligent, one for excessive speed, and the other in failing to warn the driver of speeding, but the jury found that neither the negligence of the driver nor the negligence of the deceased proximately caused or contributed to cause the accident.

■ In view of the negligence of the driver of the car, and the negligence of the deceased, is appellant liable to deceased or his representatives for the injuries caused by its negligent acts? Appellant submits that there would be no liability. We understand the established rule to be that, to relieve appellant of its liability for its negligent acts, as found, the negligence of the deceased must, in some way and to some extent, have proximately caused or contributed to cause the accident or the injuries complained of.

In view of another trial, we think to discuss only one other proposition submitted. Mrs. Etta Moore brought this suit to recover, in part, as temporary administratrix of the estate of the deceased, George M. Mitchell, and recovered as administratrix of said estate for the value of certain items. Appellant submits that under the facts shown it would not be liable to the estate for said items of expense. Appellant answered to that part of appellee's suit by demurrers and plea in abatement, all of which were overruled.

We are inclined to the opinion, under the undisputed facts disclosed by the record, that the plea in abatement should have been sustained. We think the nunc pro tunc order was improperly entered. However, in view of another trial, we do not definitely pass upon the question of appellant's liability for said items of expense, as the objection raised probably might be cured by proper orders and by amended pleading.

For the reason stated, in refusing to submit appellant's requested charge No. 2, the case must be reversed; the question there being a material and ultimate issue and not having been submitted in any other part of the court's charge.

Reversed and remanded.

### On Motion for Rehearing.

■■ On reconsideration of the case we have concluded that the remarks of counsel in his argument may have caused a larger verdict than it otherwise might have been. The more recent cases hold that, where the argument of counsel is erroneous, a reversal must follow unless it affirmatively appears that no prejudice resulted therefrom, and the burden is on appellee to show that no harmful result followed erroneous remarks. The former holdings have been modified, and the rule is now as stated. Floyd v. Fidelity Union Casualty Co. et al. (Tex. Com. App.) 39 S.W. (2d) 1091; Brown Cracker & Candy Co. v. Castle (Tex. Civ. App.) 26 S.W. (2d) 435; Dallas Ry. & Ter. Co. v. Gladys Smith (Tex. Civ. App.) 42 S.W. (2d) 794.

It is insisted also that we are in error in overruling appellant's objection to the trial court's charge in failing to charge the jury not to allow anything for loss or damage on account of grief or sorrow, or for loss of the society, affection, or companionship of the deceased.

Without discussing the question presented, we say only, in view of another trial, that the case of Hines, Director General, v. Kelley, 252 S. W. 1033, by Judge McClendon of the Commission of Appeals, Section B, and approved by the Supreme Court, sustains appellant's contention.

Other objections presented in the motion are overruled.

The motion is sustained in part, and overruled in part.