## LONG v. GALVESTON ELECTRIC CO.
### No. 9808.

Court of Civil Appeals of Texas. Galveston.
Feb. 8, 1933.

Rehearing Denied March 23, 1933.

On Motion for Rehearing April 5, 1933.

Brantly Harris and John D. Watkins, both of Galveston, for appellant.

Terry, Cavin & Mills and O. B. Wigley, all of Galveston, for appellee.

GRAVES, Justice.

The suit is for damages against the electric company alleged to have resulted to the five year old child, Jacob Long, Jr., from the collision between it and one of the company's street cars at the intersection of Avenue L and Eleventh street in the city of Galveston, upon averments that the child's injuries had been the proximate result of negligence upon the part of the operatives of the car in a number of detailed particulars; the issues of negligence raised by the pleadings and proof were submitted to a jury in special inquiries, all of which in final effect were answered favorably to the electric company, whereupon judgment upon the verdict entered for it.

On the appeal by the child through its next

friend, it is contended that the verdict lacked support in the evidence, being contrary to the overwhelming preponderance thereof, that the court erred in admitting the testimony of Mrs. Martini as to alleged statements made to her by the child's mother after the accident, also in admitting the testimony of the witness McLin as to certain tests made by him a considerable time before this accident as to how far a street car moved after its brakes were applied, and in permitting counsel for the street car company, while arguing the cause to the jury, to state to them, among other things: "Street cars do ring their bells; they are instructed to do that. It may be obnoxious to the people whose homes they are passing, but it is the only safe thing for them to do. They do it when they pass my house."

These presentments will be disposed of in the order given.

The first one, concerning the claim for an overwhelming preponderance of the evidence against the verdict, need not be decided, in view of the conclusion that the court did err to the prejudice of appellant in admitting the testimony complained of under the next two, since the evidence may not be the same upon another trial.

As concerns the latter two, we think the court should have, in the circumstances, excluded both the challenged testimony of Mrs. Martini and Mr. McLin.

■ The injured child's mother, a negro woman named Parilee Long, was not a party to the suit, which was brought and prosecuted by its father as next friend, and while a witness on the stand was neither asked if she ever talked to Mrs. Martini at all nor with reference to any conversation had with her concerning this child or this case; no predicate of any sort, therefore, had been laid for impeaching her as a witness by reason of anything which may have occurred ex curia between her and Mrs. Martini. Neff v. Cameron, 213 Mo. 350, 111 S. W. 1139, 18 L. R. A. (N. S.) 320, 127 Am. St. Rep. 606; Ayres v. Duprey, 27 Tex. 594, 86 Am. Dec. 657; The Charles Morgan v. Kouns, 115 U. S. 69, 5 S. Ct. 1172, 29 L. Ed. 316; 28 R. C. L. 636.

After the child's mother and other witnesses in its favor had given testimony tending to establish the fact of the collision, its having been caused by the negligence of the appellee's operatives, and of its having proximately caused an epileptic condition then affecting the child, Mrs. Martini as a witness for the appellee, after first giving testimony tending in purport to indicate that the suit itself was the result of malingering, was then, over strenuous objection on the part of appellant's counsel that it was hearsay, not binding upon the child, not based on any predicate for impeachment of its mother, irrelevant and immaterial, was permitted to further testify that the mother had told her the child was in the hospital from some disease, the "shots"

they gave it having caused its affliction, and that the very day of the accident she had further told her the child wasn't hurt, and then the witness added these further statements as to what had passed between her and the child's mother: "She wanted me to testify that the child's condition was caused by the accident, and I said I couldn't do it because I had children of my own, and I would tell the truth; she wanted me to come to court and testify that the child was normal before the lick, but I told her I couldn't do it because he wasn't hit bad. He fell in front but he wasn't badly hit; the next day she came in the store with the child, and he walked in and out, and the doctor came and he said there was nothing the matter with the child, so she told me."

It clearly appears from the colloquy between counsel when the stated objections were made to the admission of all this testimony, not only that it was not admissible for that purpose because, as indicated, no predicate had been laid for it, but also that it was not offered for the purpose of impeaching the child's mother, but solely on the theory that the child as a litigant was bound by these statements to Mrs. Martini as admissions on the part of its mother:

"Q. What did she want you to testify to?

"Mr. Harris: That is hearsay.

"Mr. Wigley: It is by the most interested party in this case.

"Mr. Harris: She is not a party to the suit.

"Mr. Wigley: It is the mother of this child, who is clearly responsible for what may have been done or said to make out this case."

These quoted express declarations of the purpose for which the statements were offered negative any other and rebut any suggestion that such declarations were, or could have been, receivable as indicating the interest of the mother in the case.

■ In the first place, they were not receivable as admissions of the mother against the interest of the child. Galveston H. & H. Ry. Co. v. Moore, 59 Tex. 64, 46 Am. Rep. 265; Gersdorff v. Torres (Tex. Com. App.) 293 S. W. 560; Houston & T. C. Ry. Co. v. Bradley, 45 Tex. 171; Kingsbury v. Buckner, 134 U. S. 650, 10 S. Ct. 638, 33 L. Ed. 1047; Neff v. Cameron, 213 Mo. 350, 111 S. W. 1139, 18 L. R. A. (N. S.) 320, 127 Am. St. Rep. 606; Phillips v. Herndon, 78 Tex. 378, 14 S. W. 857, 22 Am. St. Rep. 59; White v. Joyce, 158 U. S. 128, 15 S. Ct. 788, 39 L. Ed. 921; 14 R. C. L. 291; 28 R. C. L. 636; 22 C. J. 363, 407; 31 C. J. 1143; 32 C. J. 777.

■ In the next place, the appellee having thus offered the testimony as admissions of the mother binding on the child, and objection having been made to it on that ground, it was error to admit it at all, under the rule as stated by Wigmore on Evidence, § 18, as follows: "If several facts are included in the

offer, some admissible and others inadmissible, then the whole (if properly objected to) is inadmissible; in other words, it is for the proponent to sever the good and the bad parts. Similarly, an offer of a fact for two purposes is erroneous if the fact is inadmissible for one of the purposes, though it would have been admissible for the other if offered for that alone. An offer of a fact for an inadmissible purpose A is properly excluded, though the same fact would have been admissible for purpose B. Conversely, an offer of a fact for purpose B is properly admitted, even though the same fact would have been inadmissible if offered for purpose A; this follows from the doctrine of multiple admissibility."

To conjecture that, in the setting given, its effect was not only potentially but very probably to the nth degree prejudicial—that is, that it carried an imputation from a white woman that the negro child's whole case had been a frame-up, with its negro mother the chief compurgator—would be like undertaking to demonstrate the obvious. Bain Peanut Company of Texas v. Pinson (Tex. Com. App.) 294 S. W. 536; Bell v. Blackwell (Tex. Com. App.) 283 S. W. 765; Britain v. Rice (Tex. Civ. App.) 183 S. W. 84.

■ The witness McLin, after merely stating that he had participated within the three or four years prior thereto in making a test to determine the distance within which it takes to stop one of these one-man air-brake cars moving at a certain speed on a certain kind of track, was asked what distance "was found to be required to stop one of these cars moving 12 miles an hour, with good brakes, on a dry, level track, with an emergency application of air," answered "32 feet;" in making that statement, he admitted that such a distance depends upon the condition of the track, and that he did not know what effect sand on the track at the time, or any other speed, would have upon it, saying "there is a variation according to the brakes, but I don't know what it would be."

These declarations were received without even an approximate showing, as to the exact time or place of the test, whether it was in winter or summer, whether the size or the weight of the car was comparable with that here involved, or whether the car tested was loaded or empty, or whether any of the other contributing conditions were similar to those obtaining in this instance. Further, no witness fixed the speed of this car at 12 miles per hour—that at which the test Mr. McLin so participated in was had. Further, the McLin test took place on a level track without sand on it, while here the accident happened on an upgrade track that was very sandy, and the car itself was loaded with the noon-hour crowd on it. The evidence showed sharp issues between the witnesses here both as to the speed of this car, which was variously placed at 8, 10, or 15 miles per hour or better, while the distance as to how far it ran after the emergency air brakes were applied varied from 2 or 4 feet to all the way across Eleventh street.

Under our authorities, as against the objections made on that account, this testimony as to the test so participated in by Mr. McLin was inadmissible, in the absence of a showing upon appellee's part that the material and contributing facts appertaining thereto were at least similar to the conditions prevailing at the time of this accident. 10 R. C. L. 1002, par. 190; 17 Texas Jr. 401, 402, par. 142, and cited cases in footnotes 16, 17; Texas & P. Ry. Co. v. Graham & Price (Tex. Civ. App.) 174 S. W. 297; Harris v. State, 62 Tex. Cr. R. 235, 137 S. W. 373; Houston & T. C. Ry. Co. v. Ramsey, 43 Tex. Civ. App. 603, 97 S. W. 1067; Price v. Charles Warner Co. (1899) 1 Pennewill (Del.) 462, 42 A. 699; Hisler v. State (1906) 52 Fla. 30, 42 So. 692.

■ The challenged argument of appellee's counsel was improper and harmful, because the statements made were not based upon the evidence, hence constituted testimony upon counsel's part, and had a direct bearing on vital issues in the case. Although objected to on that ground at the time, the court' refused on appellant's request to instruct the jury not to consider the remarks, thus magnifying their importance in the minds of the jury, and making the error of counsel that of the court. Gulf, C. & S. F. Ry. Co. v. Butcher, 83 Tex. 309, 18 S. W. 583; Chicago, R. I. & T. Ry. Co. v. Langston, 92 Tex. 709, 50 S. W. 574, 51 S. W. 331; Bruyere v. Liberty Nat. Bank of Waco (Tex. Civ. App.) 262 S. W. 844; Missouri, K. & T. Ry. Co. v. Thomason (Tex. Civ. App.) 3 S.W.(2d) 106; Dallas Ry. & Terminal Co. v. Moore (Tex. Civ. App.) 52 S.W. (2d) 104; Floyd v. Fidelity Union Casualty Co. (Tex. Com. App.) 39 S.W.(2d) 1091; Brown Cracker & Candy Co. v. Castle (Tex. Civ. App.) 26 S.W.(2d) 435; Dallas Ry. & Terminal Co. v. Smith (Tex. Civ. App.) 42 S.W.(2d) 794; Bell v. Blackwell (Tex. Com. App.) 283 S. W. 765; Robbins v. Wynne (Tex. Com. App.) 44 S.W. (2d) 946.

To make plain the rationale of this ruling, as well as the applicability of the authorities cited as in support of it, from the state of the record:

It is true the undisputed evidence was to the effect that the bell on the street car had been ringing on its approach toward Eleventh street from near the middle of the block it was running along, and that the location of appellee's counsel's house was not given; but these very conditions disclose the harm that lurked in thus reaching out from a clear sky and supplying the testimony the jury otherwise lacked, "that they always rang the bell, were instructed to do so, and did so when

they passed my house," thereby very possibly leading the jury to conclude that the motorman was not ringing the bell because of the child's presence near the track, or because of a purpose of his own to cross the intersection without slackening his speed, since they found in appellee's favor on the closely contested issues of discovered peril, negligent speed, and unavoidable accident, when, without this new information, the proof—inclusive of that from the conductor himself—strongly tended to indicate that he had seen the child all the time from about the middle of the block back, or in ample time to have stopped or slowed down on reaching the crossing, but that, instead of doing either, he so clanged the bell in preference, intending to take the intersection on the run to make up for the extra stops he had ahead at that noon-day time.

For the errors pointed out, the judgment has been reversed and the cause remanded, with Justice LANE dissenting.

Reversed and remanded.

LANE, J., dissenting.

### On Motion for Rehearing.

GRAVES, Justice.

After painstaking reconsideration of the cause, the full court—Justice LANE having withdrawn his originally noted intention to dissent and concurred in the opinion then delivered as well as in this one—has overruled the motion for rehearing, but in deference to the earnest contention of the able counsel for appellee that our former opinion inaccurately reflected the facts shown in the record, especially with reference to the objections made to the testimony of Mrs. Martini, and to the conditions under which the accident in this instance happened, this addendum is made to what was before written:

Mrs. Martini made five statements with reference to what the child's mother told her. The first, appearing at page 193 of the statement of facts, is this: "The child was absolutely unnormal. He was a small child, and if he was going one way his head would turn the other way and his eyes were crossed, and he was deformed, and the mother told me the child was in the hospital with some disease, and the shots they gave him caused the affliction. The mother told me that."

No objection was made to this at that particular time, but since it was per se incompetent as being hearsay and was offered against a five-year old child, it would appear to have been the court's duty to notice and exclude it anyway. Cartwright v. Wise, 14 Ill. 417; Turner v. Jenkins, 79 Ill. 228; Kingsbury v. Buckner, 134 U. S. 650, 10 S. Ct. 638, 33 L. Ed. 1047; Taylor v. Rowland, 26 Tex. 293; Ann. Cas. 1913B, 443 note; Glade Coal Mining Co. v. Harris, 65 W. Va. 152, 63 S. E. 873; 31 C. J. (N. S.), Infants, pars. 254, 304, and 317.

Her second statement, appearing on page 194 of the statement of facts, given on cross-examination in response to the question, "Have you talked to the boy any since then?" was as follows: "Oh, yes, a lot, and I talked to the mother that very day, and the mother said the child wasn't hurt."

This was clearly not responsive to the question asked, and while no motion was made at the time to strike it out, the court's duty with reference to it, under the authorities cited supra, would be the same as with reference to the preceding one.

The third and fourth statements, appearing at pages 198 et seq. of the statement of facts, with accompanying proceedings, were these:

"Q. (By Mr. Wigley): What did she want you to testify to?

"Mr. Harris: That is hearsay.

"Mr. Wigley: It is by the most interested party in this case.

"Mr. Harris: She is not a party to the suit.

"Mr. Wigley: It is the mother of this child, who is clearly responsible for what may have been done, or said, to make out this case.

"Mr. Harris: She is not a party to this suit, and anything she may have said would be hearsay. I have not cross-examined her in reference to any statement she made, if any, and it is not binding on the child.

"Court: Overruled.

"Mr. Harris: Exception.

"Q. (By Mr. Wigley): What did she want you to testify to? What did she tell you that she wanted you to testify to? A. She wanted me to testify that the child's condition was caused by the accident, and I said I couldn't do it because I had children of my own, and I would tell the truth.

"Q. Did she want you to testify to the condition of the child before the accident?

"Mr. Harris: Same objection, and it is immaterial, has no bearing on the case, and the mother is not a party to the suit.

"Court: Overruled.

"Mr. Harris: Exception.

"A. She wanted me to come to the court and testify that the child was normal before the lick, but I told her I couldn't do it because he wasn't hit bad. He fell in front but he wasn't badly hit."

Our former recitation that this matter was objected to, among other reasons, because no ground for impeachment of the mother had been laid, was in that respect erroneous, that particular objection only not having been offered; but that inaccuracy does not affect the substance of the holding made in reference

to the matter, especially since the context of the record as a whole not only indisputably shows that no such predicate had been laid, but the appellee's counsel expressly disclaims having offered the testimony for any such purpose or implication.

The fifth statement, shown on page 199 of the statement of facts, is as follows: "The same, and the next day she came in the store with the child, and he walked in and out, and the doctor came and he said there was nothing the matter with the child, so she told me."

■ Again no special objection. to this was made when it was offered, but the objections formerly noted—with the exception herein stated—had just been made to it and overruled, hence it was unnecessary to repeat them when it was again offered. Jones on Evidence, Civil Cases (3d Ed.) § 894; Fort Worth & Denver C. Ry. Co. v. Thompson, 75 Tex. 501, 12 S. W. 742, 743.

As concerns the statements in the former opinion that "no witness fixed the speed of this car at 12 miles per hour," and "here the accident happened on an upgrade track that was very sandy," no error of substance appears; the only witness by whose testimony it is claimed this car was moving at twelve miles an hour, while admitting that she had stated its speed was twelve miles at the first trial of the cause, declined on the trial from which this appeal proceeds to testify that it was going over ten miles per hour.

The pictures of the scene of the accident not only show that the intersection of the streets where it happened was very sandy when they were taken, but different witnesses testified that the same conditions as there shown prevailed at the time of the accident. Furthermore, the appellee's witness Mr. Greenwalt, a passenger on the car at the time of the accident, when asked on cross-examination at this trial if he had not on the former trial testified that he had not been conscious of the slowing up of the car until the emergency brake was applied, testified as follows: "I don't think so. I protested at the form of that question at the time, saying that the speed was being reduced, either by an ordinary application of the brake, or else *by the fact that there is an upgrade going into that block all the way from 13th Street.*" The italicizing, which furnishes direct support for our former statement on this feature, is our own.

It is not felt that any further discussion as to the argument of counsel before held prejudicial be here appended, since on the reconsideration that disposition of it has been adhered to as being in all material respects based upon what actually took place.

As indicated, the motion has been overruled.

Overruled.